[No. E021854. Fourth Dist., Div. Two. Dec. 10, 1998.]

SCHAEFER'S AMBULANCE SERVICE, Plaintiff and Appellant, v. COUNTY OF SAN BERNARDINO, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IV and V.

**COUNSEL**

Michael Leight and John Gloger for Plaintiff and Appellant.

Alan K. Marks, County Counsel, and Alan L. Green, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**RICHLI, J.**—The Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act (the EMS Act, or the Act) (Health & Saf. Code, § 1797 et seq.) allows a county to create exclusive operating areas for emergency ambulance services. In 1985, the County of San Bernardino (County) created 15 exclusive operating areas and assigned 2 of them to both Schaefer's Ambulance Service (Schaefer) and a second ambulance company. At the time, Schaefer was providing ambulance services at the basic life support level; the other company was providing ambulance services at the advanced life support level.

Schaefer filed this action for injunctive and declaratory relief, in which it asserts a right to begin providing advanced life support in these two exclusive operating areas without the County's permission. It also asserts a right to carry patients from one medical facility to another, both inside and outside its exclusive operating areas, without the County's permission. The trial court ruled Schaefer had no such rights. We will affirm.

# I

## THE STATUTORY SCHEME

" '[T]he EMS Act . . . create[s] a comprehensive system governing virtually every aspect of prehospital emergency medical services.' " (*Valley Medical Transport, Inc.* v. *Apple Valley Fire Protection Dist.* (1998) 17 Cal.4th 747, 754 [72 Cal.Rptr.2d 647, 952 P.2d 664], quoting *County of San Bernardino* v. *City of San Bernardino* (1997) 15 Cal.4th 909, 915 [64 Cal.Rptr.2d 814, 938 P.2d 876].)

The Act defines "emergency medical services" as "the services utilized in responding to a medical emergency." (Health & Saf. Code, § 1797.72.) "Emergency," in turn, is defined as "a condition or situation in which an individual has a need for immediate medical attention, or where the potential for such need is perceived by emergency medical personnel or a public safety agency." (Health & Saf. Code, § 1797.70.)

"Emergency medical services," as contemplated in the Act, consist of "basic life support," administered by an "Emergency Medical Technician-I"; "limited advanced life support," administered by an "Emergency Medical Technician-II"; and "advanced life support," administered by an "Emergency Medical Technician-Paramedic." (Health & Saf. Code, §§ 1797.52, 1797.60, 1797.80, 1797.82, 1797.84, 1797.92.)

"Basic life support" is defined as "emergency first aid and cardiopulmonary resuscitation procedures . . . ." (Health & Saf. Code, § 1797.60.) "Advanced life support" is defined as "special services designed to provide definitive prehospital emergency medical care, including, but not limited to, cardiopulmonary resuscitation, cardiac monitoring, cardiac defibrillation, advanced airway management, intravenous therapy, administration of specified drugs and other medicinal preparations, and other specified techniques and procedures administered . . . at the scene of an emergency, during transport to an acute care hospital, during interfacility transfer, and while in the emergency department of an acute care hospital until responsibility is assumed by the emergency or other medical staff of that hospital." (Health & Saf. Code, § 1797.52.)

The Act provides: "Each county may develop an emergency medical services program. Each county developing such a program shall designate a local EMS agency . . . ." (Health & Saf. Code, § 1797.200.) The duties of a local EMS agency include creating an emergency medical services plan (Health & Saf. Code, §§ 1797.76, 1797.204, 1797.250), "coordinat[ing] and

otherwise facilitat[ing]" the development of an emergency medical services system (Health & Saf. Code, § 1797.252), and implementing advanced life support systems (Health & Saf. Code, § 1797.206). Any organization which provides advanced life support must be an authorized part of the local EMS agency's emergency medical services system. (Health & Saf. Code, § 1797.178.)

As part of its emergency medical services plan, a local EMS agency may create exclusive operating areas for "emergency ambulance services or providers of limited advanced life support or advanced life support." (Health & Saf. Code, §§ 1797.85, 1797.224.) Ordinarily, it must assign exclusive operating areas to providers by means of a "competitive process." However, if it assigns an exclusive operating area to a provider which is already operating in that area "in the manner and scope in which the services have been provided without interruption since January 1, 1981," it need not use a competitive process. (Health & Saf. Code, § 1797.224.)

II

FACTUAL BACKGROUND

On June 18, 1985, the County[1] adopted the transportation element of its emergency medical services plan (the Transportation Plan). The Transportation Plan divided the County into 15 exclusive operating areas. Area 1 was roughly equivalent to Upland and the western portion of Rancho Cucamonga. Area 2 was roughly equivalent to Montclair and Chino.

The Transportation Plan declared area 1 an exclusive operating area to be awarded by competitive process. However, pending the selection of a provider by competitive process, it assigned area 1 to Schaefer, Mercy,[2] and Canyon Medical Services.

---

[1]We see no need to distinguish in this opinion between the County and the County's local EMS agency. When the Transportation Plan was first drafted, the County's local EMS agency was the Inland Counties Emergency Medical Agency (ICEMA). However, the County's board of supervisors was also the governing body of ICEMA. For this reason, the Supreme Court has treated the County and ICEMA as interchangeable for purposes of the EMS Act. (*Valley Medical Transport, Inc.* v. *Apple Valley Fire Protection Dist., supra,* 17 Cal.4th at p. 751, fn. 2; *County of San Bernardino* v. *City of San Bernardino, supra,* 15 Cal.4th at p. 921, fn. 1.) Moreover, the evidence at trial indicated that ICEMA has been succeeded by the County EMS agency, which is part of the County's department of public health.

[2]Through a series of corporate acquisitions, Schaefer's main competitor in areas 1 and 2 has been known from time to time as TransMedical, Inc., Mercy Ambulance, Inc., Careline and American Medical Response. For the sake of consistency, we will refer to them all as "Mercy."

With respect to area 2, the Transportation Plan declared: "[S]ervices have been provided by the same provider . . . in the same manner and scope without interruption since January 1, 1981 and . . . it is in the best interests of this plan and the citizens of the area[] to be served to continue providing these services through the same providers." It therefore designated area 2 a noncompetitive exclusive operating area. It assigned area 2 to Schaefer and Mercy.

## III

### STANDARD OF REVIEW

■ . This case comes to us following a bench trial on the merits. We review any issues of statutory construction de novo. (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672]; *Committee for Responsible Planning* v. *City of Indian Wells* (1989) 209 Cal.App.3d 1005, 1010 [257 Cal.Rptr. 635]; see Evid. Code, § 310, subd. (a).) ■ In reviewing any other issues as to the construction of a written instrument, to the extent the evidence is in conflict, we accept the trial court's implied credibility determinations; to the extent the evidence is not in conflict, we construe the instrument, and we resolve any conflicting inferences, ourselves. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 and 866, fn. 2 [44 Cal.Rptr. 767, 402 P.2d 839].) The evidence pertaining to the construction of the Transportation Plan is not in conflict. Accordingly, we need not decide which of these two standards applies to the construction of the Transportation Plan; either way, we may construe it de novo.

■ In reviewing any other issues, the substantial evidence rule applies. That is, ". . . we look at the evidence in support of the successful party, disregarding the contrary showing. [Citations.] All conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. [Citations.]" (*Munoz* v. *Olin* (1979) 24 Cal.3d 629, 635-636 [156 Cal.Rptr. 727, 596 P.2d 1143].)

### IV, V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 581.

## VI

THE COUNTY'S AUTHORITY TO ESTABLISH EXCLUSIVE OPERATING AREAS FOR AMBULANCES PERFORMING INTERFACILITY TRANSFERS

 Schaefer contends the County lacked the authority to prohibit it from providing interfacility transfers outside its designated exclusive operating areas.

### A. *Additional Factual Background.*

Schaefer has entered into, and seeks to continue to enter into, contracts with various health maintenance organizations (HMO's) throughout the County to provide interfacility transfers. Interfacility transfers involve the transportation of a patient from one health care facility—a doctor's office, a nursing home, a hospital, or a hospice—to another. According to Schaefer, they also include the transportation of a patient from a health facility to his or her home, or vice versa, in the absence of a medical emergency. In order to perform these contracts, Schaefer must be able to pick up patients outside, as well as inside, its exclusive operating area.

On May 2, 1994, the County notified Schaefer that, by transporting patients from a convalescent home outside its exclusive operating area, it had violated the Transportation Plan. It explained: "You . . . contend that the transports . . . were 'non-emergency transports' and outside the scope and authority of the County's Plan. The County's EMS Plan defines 'emergency medical services' to comprehend not only the provision of medical services when an individual has a need for immediate medical attention, but also where there may be potential for such need either in case of an accident or injury or in the case of an interfacility transfer or transport. It seems unlikely that a convalescent home would request ambulance transport if in fact the potential for immediate medical attention was not first determined by the appropriate personnel. Individuals not in need or in potential need of immediate medical attention would not require ambulance transport but rather should be transported utilizing other modes of transport, i.e., wheelchair vans, guerney [*sic*] vans, etc." The County directed Schaefer to "cease and desist providing ambulance service within San Bernardino County outside of permitted exclusive operating Areas 1 and 2."

Schaefer contends all interfacility transfers constitute nonemergency ambulance services. James McNeal, Schaefer's president, opined that a medical emergency arises during "[m]aybe one-10th of one percent" of all interfacility transfers. However, he agreed that, for interfacility transfers, it is "preferable" to use an ambulance equipped for basic life support, and it "could

be" even "more preferable" to use an ambulance equipped for advanced life support. He testified the person who decides whether to use an ambulance for an interfacility transfer, rather than, say, a taxicab, is usually the HMO caseworker.

The County, however, contends all interfacility transfers involving an emergency ambulance—i.e., an ambulance staffed and equipped to provide at least basic life support—constitute emergency ambulance services. Dr. Conrad Salinas, the medical director of the County's local EMS agency, testified ambulances are customarily used to make interfacility transfers. The person who decides whether to use an ambulance is usually the attending physician. In Dr. Salinas's experience, if a doctor requests an ambulance equipped to provide basic life support, ". . . there is generally a medical justification for that." Every time he personally authorized an interfacility transfer, he considered it an emergency. In his view, there was no such thing as nonemergency interfacility transport.

B. *Analysis.*

The County more or less concedes that any authority it has to create exclusive operating areas derives from the EMS Act. The EMS Act expressly cloaks counties which create exclusive operating areas pursuant to the Act in state-action immunity from federal antitrust law. (Health & Saf. Code, § 1797.6.) If the County attempted to create exclusive operating areas pursuant to its general police power rather than pursuant to the Act, presumably it would fall afoul of federal antitrust law. (See generally, *Community Communications Co.* v. *Boulder* (1982) 455 U.S. 40, 48-52 [102 S.Ct. 835, 839-841, 70 L.Ed.2d 810]; *County of San Bernardino* v. *City of San Bernardino, supra,* 15 Cal.4th at pp. 917-918; *Memorial Hospitals Assn.* v. *Randol* (1995) 38 Cal.App.4th 1300, 1308-1309 [45 Cal.Rptr.2d 547]; *A-1 Ambulance Service, Inc.* v. *County of Monterey* (9th Cir. 1996) 90 F.3d 333, 335-337.)[5]

The Transportation Plan contains its own definition of "emergency medical services," which is essentially identical to the definition in the EMS Act, with the following italicized language added: "[T]he services needed to provide urgent medical care in a condition or situation in which an individual has a need for immediate medical attention or where the potential for

---

[5]The County could not be held liable in damages. However, the exclusive operating areas could be enjoined. (15 U.S.C. §§ 34-36; *Crosby* v. *Hosp. Auth. of Valdosta & Lowndes County* (11th Cir. 1996) 93 F.3d 1515, 1533; *Thatcher Enterprises* v. *Cache County Corp.* (10th Cir. 1990) 902 F.2d 1472, 1477.)

such need is perceived by emergency medical personnel, a public safety agency, *or—with respect to interfacility transfers—qualified medical personnel of the transferring facility. Any transportation needs pursuant to a request for an emergency ambulance . . . shall be deemed the providing of emergency medical services.*"

The County argues the EMS Act's permission to create exclusive operating areas for "emergency ambulance services" (Health & Saf. Code, § 1797.85) encompasses all services rendered by emergency ambulances; in other words, that "emergency" modifies "ambulance," not "services." We agree.

The EMS Act does not define "emergency ambulance services." It never uses this term outside of the exclusive operating area provisions. These provisions allow a local EMS agency to establish exclusive operating areas for "emergency ambulance services" and/or "providers of limited advanced life support or advanced life support." (Health & Saf. Code, § 1797.85.)

In *A-1 Ambulance Service, Inc.* v. *County of Monterey, supra*, 90 F.3d 333, the court held the exclusive operating area provisions applied to providers of advanced life support even when they were performing interfacility transfers. (*Id.*, at pp. 334-337.) It explained: "A straightforward reading of §§ 1797.85 and 1797.224 leads us to the conclusion that the California Legislature intended to allow EMS agencies to create exclusive operating areas for: (1) emergency ambulance services; (2) providers of limited advanced life support; and (3) providers of advanced life support. [¶] On its face, therefore, the EMS Act appears to permit Monterey County to create exclusive operating areas for ALS ambulance service providers, even if the ALS ambulance service providers are engaged in non-emergency interfacility transfers." (*Id.*, at p. 336.)

The court also noted that the definition of "advanced life support" in Health and Safety Code section 1797.52 "pertains to the level of service the ambulance provides during certain specified circumstances, including 'during interfacility transfer,' not the status of the patient that the ambulance transports. Therefore, even if an ambulance transports a patient who does not require emergency care, the ambulance is providing ALS service if it offers the 'special services designed to provide prehospital emergency medical care' and is engaged in one of the activities listed in § 1797.52." (*A-1 Ambulance Service, Inc.* v. *County of Monterey, supra*, 90 F.3d at p. 336.)

We believe that, just as the definition of "providers of advanced life support" turns on whether that level of service is available, and not on

whether the particular patient actually needs that level of services, so does the definition of "emergency ambulance services." These terms are used in parallel, and they should be given a parallel construction. It would make little sense if exclusive operating areas for "providers of advanced life support" could restrict outsiders from performing interfacility transfers, but exclusive operating areas for "emergency ambulance services" could not.

Admittedly, the EMS Act in general is concerned with "emergency medical services," which are defined as medical services rendered during an actual or at least potential emergency. It is significant, however, that the exclusive operating area provisions eschew the term "emergency medical services" in favor of the terms "emergency ambulance services" and "pro- .viders of . . . advanced life support." We believe these provisions were intended to have broader scope.

■ The purpose of creating exclusive operating areas is to eliminate competition. "[T]he EMS Act 'evidences an intent to "displace unregulated competition" in a field where quality and cost control are vitally important state interests.' [Citation.]" (*County of San Bernardino* v. *City of San Bernardino, supra,* 15 Cal.4th at p. 932, quoting *Mercy-Peninsula Ambulance* v. *County of San Mateo* (N.D.Cal. 1984) 592 F.Supp. 956, 963.) "[A]n EOA permits local EMS agencies to offer private emergency service providers protection from competition in profitable, populous areas in exchange for the obligation to serve unprofitable, more sparsely populated areas." (*Valley Medical Transport, Inc.* v. *Apple Valley Fire Protection Dist., supra,* 17 Cal.4th at p. 759.)

■ The County asserts that most ambulance services use the income from interfacility transfers to subsidize more traditional emergency medical services. It stands to reason that providing interfacility transfers under contract to an HMO is a more stable and predictable source of income than responding to 911 calls from the general population; the poor and the uninsured presumably account for more than their proportionate share of the latter. If interfacility transfers were deemed nonemergency ambulance services, outside providers could invade an exclusive operating area and "cherry-pick" this income. This would interfere with the designated provider's ability to provide medical services in actual or potential emergencies. We believe that to prevent this, i.e., for prophylactic reasons, the drafters of the EMS Act empowered local EMS agencies to create exclusive operating areas for interfacility transfers.

In addition, we believe that carving interfacility transfers out from the exclusive operating area scheme would pose serious enforcement problems.

The EMS Act does not support a blanket rule that interfacility transfers *never* constitute emergency ambulance services. The question of whether any given ambulance run violated the Transportation Plan would therefore require a particularized evaluation of the medical needs of the patient transported, and the services actually rendered to that patient. Who would make this determination? Schaefer? The County? The doctor or HMO caseworker who called for the ambulance? If the latter, how would this be documented? Would this determination be made prospectively or in hindsight? If a patient Schaefer was transporting between medical facilities developed trouble breathing, would the "interfacility transfer" suddenly turn into "emergency ambulance services"? If so, would Schaefer have to stop transporting the patient? Once again, we believe the drafters of the EMS Act intended to provide a bright-line test for violations of an exclusive operating area, based on the nature of the ambulance providing the services.

Schaefer relies on an opinion of the Legislative Counsel. ██ "While an opinion of the Legislative Counsel is entitled to respect, its weight depends on the reasons given in its support." (*Santa Clara County Local Transportation Authority* v. *Guardino* (1995) 11 Cal.4th 220, 238 [45 Cal.Rptr.2d 207, 902 P.2d 225].) Apparently the opinion was written because a local EMS agency had designated one exclusive provider of ambulance services for a particular city. In doing so, the local EMS agency had purported to act pursuant to Health and Safety Code section 1797.106.[6] A hospital in the city wanted to contract with a nondesignated ambulance service to transport members of a group practice prepayment health care service plan. A member of the Legislature asked the Legislative Counsel, "Does Section 1797.106 of the Health and Safety Code preclude a group practice prepayment health care service plan from contracting directly with a private ambulance company for transportation services for members of the plan?" (Ops. Cal. Legis. Counsel, No. 11402 (Aug. 7, 1985) p. 1.)

---

[6]Health and Safety Code section 1797.106 provides:

"(a) Regulations, standards, and guidelines adopted by the authority and by local EMS agencies pursuant to the provisions of this division shall not prohibit hospitals which contract with group practice prepayment health care service plans from providing necessary medical services for the members of those plans.

"(b) Regulations, standards, and guidelines adopted by the authority and by local EMS agencies pursuant to the provisions of this division shall provide for the transport and transfer of a member of a group practice prepayment health care service plan to a hospital that contracts with the plan when the base hospital determines that the condition of the member permits the transport or when the condition of the member permits the transfer, except that when the dispatching agency determines that the transport by a transport unit would unreasonably remove the transport unit from the area, the member may be transported to the nearest hospital capable of treating the member."

The Legislative Counsel concluded it did not. He reasoned: "The [EMS] Act is directed toward providing rapid medical services in emergency medical situations and does not authorize . . . local EMS agencies to regulate contracts by medical facilities for ambulance services in other situations. On the contrary, we construe Section 1797.106 as requiring that the regulations, standards, and guidelines adopted by . . . local EMS agencies interfere as little as possible with contracts between health care service plans and their members.

"In other words, subdivision (a) of Section 1797.106 specifies that regulations, standards, and guidelines shall not prohibit hospitals which contract with health care service plans from providing necessary medical services for the members of those plans. Subdivision (b) of the section then provides for transport or transfer of members of those plans who have been in emergency medical situations to hospitals where they are insured when such a move is feasible. The section does not authorize the preemption of the authority of a group practice prepayment health care service plan to contract with an ambulance company for services for members of the plan, generally, such as for the transfer or transport of patients not admitted in emergency situations." (Ops. Cal. Legis. Counsel, No. 11402, *supra*, p. 4.)

This Legislative Counsel opinion is not particularly relevant here. It was premised exclusively on Health and Safety Code section 1797.106; it did not take into account a local EMS agency's authority to create exclusive operating areas pursuant to Health and Safety Code sections 1797.85 and 1797.224. We are inclined to agree with the Legislative Counsel that Health and Safety Code section 1797.106, standing alone, would not authorize a local EMS agency to establish an exclusive operating area. In this appeal, Schaefer does not purport to rely on Health and Safety Code section 1797.106; we therefore need not decide how this section interacts with sections 1797.85 and 1797.224.[7]

 We conclude the Transportation Plan prohibits Schaefer from performing interfacility transfers outside its own exclusive operating areas.

---

[7]Stooping to dictum, however, we note it is arguable that exclusive operating areas in no way prohibit a hospital from providing necessary medical services to members of a group practice prepayment health care service plan; they merely require the hospital to provide ambulance services via the designated provider(s).

It is also arguable that a local EMS agency's "plan" is not a "regulation, standard, or guideline" subject to the limitations of Health and Safety Code section 1797.106. This language may have been more narrowly aimed at overriding a local EMS agency's protocols for triage and transfer (Health & Saf. Code, § 1797.170) and its guidelines for transfer agreements between hospitals with varying levels of care (Health & Saf. Code, § 1797.172), but not its overall EMS plan.

## VII

### Disposition

The judgment is affirmed. The County shall recover costs on appeal against Schaefer.

McKinster, Acting P. J., and Ward, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 31, 1999.