[No. B190318. Second Dist., Div. Eight. Feb. 22, 2008.]

RANDY D. CANISTER, Plaintiff and Appellant, v.
EMERGENCY AMBULANCE SERVICE, INC., Defendant and Respondent.

COUNSEL

Randy D. Canister, in pro. per.; Law Office of Ted W. Pelletier and Ted W. Pelletier for Plaintiff and Appellant.

Dummit, Briegleb, Boyce & Buchholz, Adam R. James, Darren W. Dummit and Craig Dummit for Defendant and Respondent.

OPINION

**FLIER, J.**—Randy D. Canister appeals from a defense judgment entered after a jury found the defendant ambulance company not negligent in the accident resulting in appellant's injury. This action raises the issue whether emergency medical technicians (EMT's) are health care providers protected by the Medical Injury Compensation Reform Act (MICRA; Civ. Code, §§ 3333.1, 3333.2; Code Civ. Proc., §§ 340.5, 364, 667.7, 1295; Bus. & Prof. Code, § 6146) and whether negligence in operating an ambulance qualifies as professional negligence. Appellant contends the trial court erred in ruling the action subject to MICRA, allowing prejudicial evidence of collateral payments to be repeatedly admitted before the jury. We hold that EMT's are health care providers and negligence in operating an ambulance qualifies as professional negligence when the EMT is rendering services that are identified with human health and for which he or she is licensed.

## FACTS AND PROCEDURAL HISTORY

The basic facts, developed during a pretrial motion for summary adjudication or, in the alternative, in limine, brought by respondent Emergency Ambulance Service, Inc. (EAS), are not in dispute. Appellant, a police officer with the Los Angeles Police Department, was accompanying an arrestee in the back of an EAS ambulance when it hit a curb, injuring appellant. The ambulance was being driven by an employee of EAS while another EAS employee attended to the arrestee in the rear of the ambulance. Each

employee was a licensed EMT-I (see Health & Saf. Code, §§ 1797.80, 1797.160) and acting in the course and scope of employment. Appellant was not wearing a seatbelt when he was injured. He alleged the ambulance was being driven negligently and neither employee had informed him that seatbelts were available in the rear of the ambulance.

On the foregoing stipulated facts, the court ruled before trial that appellant's action was subject to the provisions of MICRA.[1] The trial court denied appellant's motion for reconsideration of this issue, and the case proceeded to trial. Based on its pretrial ruling, the court permitted EAS to introduce evidence of payment of appellant's medical expenses and lost earnings by a collateral source under Civil Code section 3333.1.

At trial, the parties introduced conflicting evidence regarding whether appellant was aware or should have been aware of the availability of seatbelts in the rear of the ambulance and whether the EMT's were negligent in operating the ambulance. Appellant contended the ambulance was negligently driven and both driver and attendant should have informed him of the availability of the seatbelts.

EAS presented evidence that seatbelts were available in the rear of the ambulance and there was sufficient lighting to see them if appellant had looked. Witnesses told the jury the accident happened when a car crossed into the ambulance's line of travel, forcing the ambulance to swerve to avoid hitting it. An accident reconstruction expert for EAS testified the ambulance driver's actions were appropriate given the circumstances. EAS also introduced a written statement, which appellant provided to the police department just after the crash, which stated that appellant had not worn a seatbelt as a "tactical" decision.[2]

Appellant's partner, who was following the ambulance in their patrol car, testified the car "never crossed over" the line into the ambulance's lane and merely got "too close" to the dividing line. Appellant also produced evidence that the ambulance driver was at the end of a 24-hour shift. On his own behalf, appellant testified his custom and practice was "to always wear your seat belt," and he looked for a seatbelt in the ambulance but "didn't see one."

---

[1] The court ruled as a matter of law that the provisions of MICRA "shall apply to all issues of damages, evidence and other matters, as appropriate, at the trial of this case."

[2] The accident reconstruction expert testified a police officer may make a determination not to use a seatbelt, and a Los Angeles Police Department regulation required officers to wear seatbelts unless "a potentially dangerous tactical situation is perceived or anticipated." (See Veh. Code, §§ 27315, subd. (g) [seatbelt requirement "does not apply to a public employee, when in an authorized emergency vehicle . . . , unless required by the agency employing the public employee"], 27315.5 [requiring, prior to date of accident, law enforcement agencies to establish written policy stating whether their officers are required to wear seatbelts].)

He also disavowed his written statement to the police department, saying he had not slept or eaten for almost 24 hours, was in pain and had taken medication when he gave the statement.

After deliberating one hour, the jury found in a special verdict that EAS was not negligent. Appellant timely appealed from the resulting judgment.

## STANDARD OF REVIEW

We review any issues of statutory construction de novo. (*Schaefer's Ambulance Service v. County of San Bernardino* (1998) 68 Cal.App.4th 581, 586 [80 Cal.Rptr.2d 385].) When the evidence is not in conflict, we are presented with a question of law and are not bound by the findings of the trial court. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].) In reviewing any other issues, we apply the substantial evidence standard of review. We look at the evidence in support of the successful party, disregarding any contrary showing, and we resolve all conflicts in favor of the respondent, indulging in all legitimate and reasonable inferences to uphold the verdict if possible. (*Schaefer's Ambulance Service v. County of San Bernardino, supra*, 68 Cal.App.4th at p. 586.) When two or more inferences can reasonably be deduced from the facts, we do not substitute our deductions for those of the finder of fact. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874 [197 Cal.Rptr. 925].) We must affirm if substantial evidence supports the trier of fact's determination, even if other substantial evidence would have supported a different result. (*Id.* at p. 874.)

## DISCUSSION

Appellant contends the court erred in ruling his action was subject to MICRA limitations, specifically Civil Code section 3333.1.[3] Appellant argues that the court's ruling allowed EAS to inject prejudicial collateral payment evidence into the trial, denying appellant a fair assessment of liability by the jury. We disagree.

---

[3] Civil Code section 3333.1, subdivision (a) provides, in pertinent part: "In the event the defendant so elects, in an action for personal injury *against a health care provider based upon professional negligence,* he may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to the United States Social Security Act, any state or federal income disability or worker's compensation act, any health, sickness or income-disability insurance, accident insurance that provides health benefits or income-disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services. . . ." (Italics added.)

Civil Code section 3333.1, subdivision (c)(1) defines a " 'health care provider' " to mean "any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, or licensed pursuant to the Osteopathic Initiative Act, or the Chiropractic Initiative Act, or *licensed pursuant to Chapter 2.5 (commencing with Section*

## 1. *EMT's Are Health Care Providers*

On appeal, appellant initially asserts EMT's are not "health care providers" under MICRA.[4] Preliminarily, we note that appellant never raised an objection in the trial court to the application of MICRA on the basis that EMT's are not "health care providers" as defined in the MICRA statutes.

In opposing EAS's motion for summary adjudication or, alternatively, in limine, regarding MICRA's application, appellant argued only that alleged negligence in operating an ambulance was not "professional negligence" because operation of an ambulance is not conduct for which EMT's are licensed. The trial court therefore did not have an opportunity to rule upon whether EMT's are health care providers under MICRA.

Appellant attributes this omission to a claimed "numerical sleight of hand" by EAS in "misciting" the Health and Safety Code and "misleading" appellant and the trial court as to the governing statutory provisions, first in a motion to strike portions of appellant's statement of damages for not adhering to MICRA damage limitations and then in moving for summary adjudication or in limine seeking an order that MICRA provisions apply to this action. Appellant states that EAS first informed the trial court, correctly, that MICRA applies to persons licensed under any section in "Chapter 2.5 (commencing with Section 1440) of Division 2 (commencing with section 1200) of the Health and Safety Code." (Underscoring omitted.) However, appellant contends, EAS then "claimed that EMT's are covered by MICRA because they are 'licensed pursuant to Health and Safety Code Section 1797.170[,] which is contained within *Division 2.5* of the Health and Safety Code,' " i.e., EAS purportedly cited "[n]ot the MICRA-covered *Chapter* 2.5 of Division 2

*1440) of Division 2 of the Health and Safety Code*; and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code." (Italics added.)

Civil Code section 3333.1, subdivision (c)(2) defines " 'professional negligence' " as "a negligent act or omission to act *by a health care provider* in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (Italics added.)

[4] Under the respondeat superior doctrine, MICRA applies to an employing entity held vicariously liable for the professional negligence of its agents, if such agents are health care providers. (*Lathrop v. HealthCare Partners Medical Group* (2004) 114 Cal.App.4th 1412, 1424 [8 Cal.Rptr.3d 668].) When the liability of an employer in a medical malpractice action is wholly derivative and not based on fault, the vicariously liable employer is entitled to invoke against the injured plaintiff whatever limitations on liability are available to its health care provider employee. (*Id.* at pp. 1425–1426.)

(§§ 1440–1498), but *Division 2.5* (§§ 1797–1799.207), a fully distinct Division *not* part of Division 2."[5] (Underscoring omitted.) Appellant contends neither he nor the trial court noticed EAS's "clever miscitation" and therefore neither questioned whether EMT's are covered "health care providers" under MICRA.

■ Notwithstanding appellant's speculations regarding EAS's motivation, we decline to attribute improper motives to EAS, which accurately quoted the statutes. Had appellant disagreed with EAS's interpretation or misapplication of accurately quoted statutes, it was incumbent upon appellant to raise the issue before the trial court. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184–185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261]; *In re Dakota S.* (2000) 85 Cal.App.4th 494, 501–502 [102 Cal.Rptr.2d 196].) It is unfair for a party not to object to an error of which the party is or should be aware, " 'thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.' [Citation.]" (*Porter v. Golden Eagle Ins. Co.* (1996) 43 Cal.App.4th 1282, 1291 [51 Cal.Rptr.2d 338].)

### A. *Whether EMT's Are Health Care Providers Is an Issue of Law*

■ However, we have discretion to consider a new theory on appeal when, as here, it involves a pure question of the application of law to undisputed facts. (*Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316–1317 [88 Cal.Rptr.2d 758]; *Yeap v. Leake* (1997) 60 Cal.App.4th 591, 599, fn. 6 [70 Cal.Rptr.2d 680].) We may in any event decide a case on any legal theory, regardless of whether it is urged by counsel in the appellate brief. (*Yeap v. Leake, supra,* at p. 599, fn. 6; *Banco Do Brasil, S.A. v. Latian, Inc.* (1991) 234 Cal.App.3d 973, 999, fn. 41 [285 Cal.Rptr. 870].) In the present case, both parties have had the opportunity to address the issue on the merits and we therefore have discretion to decide the issue.

### B. *EMT's Are Licensed Health Care Providers*

#### 1. *Statutory Background of EMT Licensing*

When the MICRA provisions were enacted in 1975, they specifically encompassed persons licensed "pursuant to Chapter 2.5 (commencing with Section 1440) of Division 2 of the Health and Safety Code." These provisions included persons licensed under Health and Safety Code former section 1480 (former section 1480).

---

[5] In several instances, EAS referred in passing to EMT's as being licensed under "*Chapter* 2.5 of the Health & Safety Code." (Italics added.) However, it appears appellant was not misled by this misnomer, since in his opposition he correctly referred to EMT's as being "licensed pursuant to *Division* 2.5 of the Health and Safety Code." (Italics added.)

i. *Wedworth-Townsend Paramedic Act*

Former section 1480 was enacted as part of the Wedworth-Townsend Paramedic Act (WTPA; Health & Saf. Code, former §§ 1480–1485), which authorized counties to conduct a pilot program "utilizing mobile intensive care paramedics for the delivery of emergency medical care to the sick and injured at the scene of an emergency and during transport to a hospital, while in the hospital emergency department, and until care responsibility is assumed by the regular hospital staff." (Stats. 1970, ch. 421, § 1, pp. 832–833.) Health and Safety Code former section 1481 defined " 'mobile intensive care paramedics' " as "personnel who have been specially trained in emergency cardiac and noncardiac care in a training program certified by the county health officer or the director of hospitals designated by the board of supervisors . . . ." (Stats. 1970, ch. 421, § 1, pp. 832, 833.) The WTPA provided for county training and certification of paramedics, as well as county establishment of recertification criteria, and set forth minimum training standards for paramedics. (*Mercy-Peninsula Ambulance v. County of San Mateo* (1984) 592 F.Supp. 956, 958.) Although the WTPA was originally to expire by its terms in 1979, it was extended by amendment until January 1, 1982. (Stats. 1979, ch. 555, § 1, p. 1764.)

As explained in *Mercy-Peninsula Ambulance v. County of San Mateo, supra*, 592 F.Supp. at page 958, "[i]n 1980, the Emergency Medical Services [System] and [the Prehospital] Emergency Medical Care Personnel Act ('EMS Act'), [Health & Saf. Code,] §§ 1797 *et seq.*, was adopted to replace the repealed Emergency Medical Care Services Act [citation]. The EMS Act, which took effect in 1981, [sought] to 'provide the state with a statewide system for emergency medical services by establishing within the Health and Welfare Agency the Emergency Medical [Services] Authority which is responsible for the coordination and integration of all state activities concerning emergency medical services . . .' [citation]." (See Health & Saf. Code, § 1797.1.)

The EMS Act (Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act; Health & Saf. Code, § 1797 et seq.) provided for certification of paramedical and other personnel in counties creating such systems. In 1982, the WTPA, portions of which were incorporated in the EMS Act, was amended to coordinate with the EMS Act. (*Mercy-Peninsula Ambulance v. County of San Mateo, supra*, 592 F.Supp. at p. 959.)

During this evolution, former section 1480 itself was amended several times and repealed by the terms of Health and Safety Code former section 1484 in 1979, effective as of January 1, 1982. (Stats. 1979, ch. 555, § 1, p. 1764.) In 1982, the Legislature repealed article 3 (commencing with former section 1480) of chapter 2.5 of division 2 of the Health and Safety Code and enacted a new article 3, to take immediate effect. (Stats. 1982, ch. 1012, §§ 1, 2, pp. 3711–3713.) Among other things, "paramedic" was redefined in former section 1480 in accordance with the minimum standards for EMT-P's (mobile intensive care paramedics), as discussed below. (Stats. 1982, ch. 1012, §§ 1, 2, pp. 3711, 3712.) Article 3 contained a sunset clause providing it would remain in effect only until January 1, 1984, unless such date was deleted or extended by a later enacted statute. (Stats. 1982, ch. 1012, §§ 1, 2, pp. 3711, 3713.) No such statute was enacted, and the WTPA, including former section 1480, was repealed in its entirety in 1984. (See *Mercy-Peninsula Ambulance v. County of San Mateo, supra,* 592 F.Supp. at p. 959.)

ii.  *EMS Act*

As enacted, the EMS Act no longer referred to "mobile intensive care paramedics" but instead defined different skill levels among emergency medical care personnel. Under the EMS Act, "EMT-I" is defined as "an individual trained in all facets of basic life support" (Health & Saf. Code, § 1797.80), an "EMT-II" is defined as an "EMT-I" with additional training in limited advanced life support (Health & Saf. Code, § 1797.82), and a paramedic ("EMT-P" or "mobile intensive care paramedic") is defined as an individual whose "scope of practice [is] to provide advanced life support" (Health & Saf. Code, § 1797.84). The EMS Authority (Emergency Medical Services Authority) was empowered to establish standards for EMT-I's, EMT-II's and paramedics. (*Mercy-Peninsula Ambulance v. County of San Mateo, supra,* 592 F.Supp. at pp. 958–959; Health & Saf. Code, §§ 1797.80–1797.84, 1797.170–1797.172.) The EMS Act created a comprehensive system to govern virtually every aspect of prehospital emergency medical services. (*Schaefer's Ambulance Service v. County of San Bernardino, supra,* 68 Cal.App.4th at p. 584.)

iii.  *Impact on MICRA*

Although the apparent intent was to create a comprehensive system governing prehospital emergency medical services, repeal of the WTPA, including repeal of former section 1480, raised an issue whether the repeal was intended to remove those persons licensed under the WTPA from MICRA, which defined " 'health care provider' " in terms of "any person . . .

licensed pursuant to Chapter 2.5 (commencing with Section 1440) of Division 2 of the Health and Safety Code . . . ." (Civ. Code, § 3333.1, subd. (c)(1).)

### 2. *Health and Safety Code section 1797.4*

In 1988, the Legislature enacted Health and Safety Code section 1797.4 (section 1797.4). Section 1797.4 provides, in pertinent part: "Any reference in any provision of law to mobile intensive care paramedics subject to former Article 3 (commencing with Section 1480) of Chapter 2.5 of Division 2 shall be deemed to be a reference to persons holding valid certificates under this division as an EMT-I, EMT-II, or EMT-P." (Stats. 1988, ch. 260, § 1, p. 929.)

EAS argues that the Legislature added section 1797.4 to assure that all EMT's (EMT-I's, EMT-II's and EMT-P's) would be treated the same as mobile intensive care paramedics, who were originally covered by MICRA. Appellant argues that the Legislature enacted section 1797.4 in 1988 merely to give meaning to certain existing references in statutes referring to "mobile intensive care paramedics" that remained in the code. Appellant contends the Legislature did not declare that any law that had ever applied in any way to "mobile intensive care paramedics" now necessarily applied to all types of EMT's by virtue of section 1797.4. Furthermore, appellant asserts that section 1797.4 has no impact upon this case because the MICRA statutes do not contain any express reference to "mobile intensive care paramedics." He argues that, at most, the MICRA statutes *used to* encompass mobile intensive care paramedics—but the Legislature expressly (and, by presumption, intentionally) *removed* paramedics from the MICRA-covered statutory scheme." Moreover, he contends, even if the Legislature intended section 1797.4 to assure that mobile intensive care paramedics are still considered health care providers, it would extend only to "heavily-trained" paramedics, not "lightly-trained" EMT-I's "which did not exist when MICRA was enacted." (Italics omitted.)

We determine that EAS is correct and find appellant's arguments unpersuasive.

### i. *Statutory Intent*

In interpreting section 1797.4, we seek to determine the Legislature's intent in order to effectuate the purpose of the law. (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 927 [22 Cal.Rptr.3d 530, 102 P.3d 915].) We begin with the

words of the statute, because generally they are the most reliable indicator of legislative intent. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) If the statutory language is clear and unambiguous, we end our inquiry, since " '[i]f there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' " (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 [56 Cal.Rptr.3d 880, 155 P.3d 284].) When the text of a statute is susceptible of more than one reasonable interpretation, we consider " ' "a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' " (*Elsner v. Uveges, supra*, at p. 929.)

### ii.  *Plain Meaning of Section 1797.4*

The language of section 1797.4 clearly indicates an intention that the laws that had formerly applied to "mobile intensive care paramedics" now apply to all types of EMT's. Section 1797.4 states that "[a]ny reference in any provision of law" to mobile intensive care paramedics who were "subject to former Article 3 (commencing with Section 1480) of Chapter 2.5 of Division 2 shall be deemed to be a reference to" persons holding valid certificates as an EMT-I, EMT-II, or EMT-P. "Any reference in" is inclusive, and the use of such language indicates the Legislature intended section 1797.4 to have a broad reach. In indicating persons subject to "former Article 3 (commencing with Section 1480) of Chapter 2.5 of Division 2" shall be deemed a reference to persons holding valid EMT licenses, the Legislature plainly intended to effect no change in the status of such persons with respect to any applicable statutes from the former WTPA. We disagree with appellant's contention that section 1797.4 was not designed to cover EMT's since the MICRA statutes do not actually contain the words "mobile intensive care paramedics." If the Legislature intended section 1797.4 to apply only to statutes in which the words "mobile intensive care paramedics" expressly appear, it could have used more direct language. For example, it could have provided that " 'mobile intensive care paramedics' in any provision of law shall mean persons holding valid certificates under this division as an EMT-I, EMT-II, or EMT-P." The Legislature's use of the phrase "[a]ny reference in" clearly indicates a broader application than contended by appellant.

■  We decline to assume, as argued by appellant, that the Legislature intended to remove all but paramedics from MICRA provisions. If the Legislature intended to effect a substantial change in the law by removing an entire class of defendants (nonparamedic EMT's) from MICRA's coverage, it could and surely would have done so expressly. An intention to legislate by implication will not be presumed. (*Krater v. City of Los Angeles* (1982) 130

Cal.App.3d 839, 845 [181 Cal.Rptr. 923]; see also *Fuentes v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449] ["Repeals by implication are not favored . . . ."]; *Ramos v. City of Santa Clara* (1973) 35 Cal.App.3d 93, 97 [110 Cal.Rptr. 485] ["subsequent legislation is not presumed to effectuate a repeal of the existing law in the absence of that expressed intent"].)

### iii. *Legislative History of Section 1797.4*

Further, the legislative history of section 1797.4 makes crystal clear the Legislature did not intend any change in the law as claimed by appellant. To the extent there may be any ambiguity in section 1797.4, its legislative history unequivocally establishes the Legislature intended to effect merely technical changes in terminology, including substituting a reference to EMT-I's, EMT-II's and EMT-P's in place of any reference to "mobile intensive care paramedics" in existing statutes.[6]

Section 1797.4 was added in an amendment to Assembly Bill No. 1119 (1987–1988 Reg. Sess.) at the request of the EMS Authority. Assembly Bill No. 1119 passed both houses of the Legislature and was signed into law by the Governor. Committee analyses indicate that part of the purpose of the bill was merely to make "technical reference changes" and "delete[] obsolete language." (Assem. Com. on Health, 3d reading analysis of Assem. Bill No. 1119 (1987–1988 Reg. Sess.) as amended Jan. 11, 1988, par. 2; Sen. Com. on Health and Human Services, analysis of Assem. Bill No. 1119 (1987–1988 Reg. Sess.) as amended Jan. 11, 1998.)

The EMS Authority prepared an enrolled bill report at the time of the bill's submission to the Governor. The report explained that section 1797.4 was being added in order "to specify that references in the codes to paramedics certified under the [WTPA] shall be considered references *to personnel certified under the EMS Act.*" (Health and Welfare Agency, Enrolled Bill Rep. on Assem. Bill No. 1119 (1987–1988 Reg. Sess.) June 21, 1988, p. 1, italics added.)

---

[6] Neither party has asked this court to take judicial notice of the legislative history of section 1797.4. However, we may take judicial notice of "[o]fficial acts of the legislative, executive, and judicial departments . . . of any state of the United States." (Evid. Code, § 452, subd. (c); see also Code Civ. Proc., § 1859 ["In the construction of a statute the intention of the Legislature . . . is to be pursued, if possible . . . ."]), and we may do so on our own motion (Evid. Code, § 459, subd. (a)). We have given notice to the parties of our intent to take judicial notice of certain legislative materials, including the legislative history materials discussed below, and afforded them the opportunity to respond.

The enrolled bill report stated that Assembly Bill No. 1119 "will effectively update all of the known, as well as any unknown, references to the [WTPA], without having to locate and amend each individual code section containing the reference. The obsolete references need to be corrected in order to clarify that the various code sections, which could affect such things as reporting responsibilities, *liability*, etc., do still apply to paramedics, and to other prehospital emergency medical care personnel as well. If the references are not updated, legal questions regarding the application of the code sections to prehospital personnel will continue to be a problem." (Health and Welfare Agency, Enrolled Bill Rep. on Assem. Bill No. 1119 (1987–1988 Reg. Sess.) June 21, 1988, p. 1, italics added.)

The enrolled report indicates section 1797.4 was enacted in part to update any obsolete references to the former WTPA, i.e., any references to "former Article 3 (commencing with Section 1480) of Chapter 2.5 of Division 2," that remained in other statutes, to clarify such references and to dispel any question that such references in existing statutes are to be deemed references to persons holding valid certificates under division 2.5 of the Health and Safety Code, i.e., EMT-I's, EMT-II's and EMT-P's. The report explained: "Even though the [WTPA] was replaced by the EMS . . . Act, effective 1981, the EMS Authority continues to find obsolete references to [the WTPA,] and to persons licensed pursuant to that act, in other code sections that are still operative. Obsolete references to the [WTPA] have been found in the Business and Professions Code, the Civil Code, the Code of Civil Procedure[] and the Health and Safety Code, among others. Since the [WTPA] was in effect from 1970 to 1979, with portions extended through 1982 and 1984, that act is likely referenced in any number of other code sections added or amended during those 14 years. Legal questions have come up regarding whether the code sections containing the obsolete reference still apply to prehospital emergency medical care personnel." (Health and Welfare Agency, Enrolled Bill Rep. on Assem. Bill No. 1119 (1987–1988 Reg. Sess.) June 21, 1988, p. 2.) We find the enrolled bill report instructive in ascertaining legislative intent. (*Elsner v. Uveges, supra*, 34 Cal.4th at p. 934, fn. 19 ["we have routinely found enrolled bill reports, prepared by a responsible agency contemporaneous with passage and before signing, instructive on matters of legislative intent"]; but see *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 41–42 [34 Cal.Rptr.3d 520] ["enrolled bill reports cannot reflect the intent of the Legislature because they are prepared by the executive branch . . ."].)

iv.  *Case Authority*

Existing case law also supports our interpretation of section 1797.4 as applying to all EMT's. Our Supreme Court has applied the provisions of

MICRA to an action against an ambulance company brought by an inmate injured while being transported from the prison to a hospital. (*Belton v. Bowers Ambulance Service* (1999) 20 Cal.4th 928 [86 Cal.Rptr.2d 107, 978 P.2d 591] (*Belton*).) In *Belton*, neither party disputed that the defendant ambulance company was a health care provider within the meaning of MICRA. The court itself felt no need to address whether the transportation of a prisoner to a hospital by an ambulance fell within MICRA and held that the one-year limitations period of Code of Civil Procedure section 340.5 would bar the action unless some other provision extended the time.[7] (*Belton, supra,* at p. 930.)

We reject appellant's argument that the repeal of former section 1480 necessarily removed EMT's from MICRA's application. Consistent with *Belton*, we hold the enactment of section 1797.4 indicates a legislative intent that EMT's, including EMT-I's, EMT-II's and EMT-P's, be deemed "health care providers" within MICRA's purview.

We note also that other courts have adopted a broad definition of "health care provider" consistent with our holding. (*Cryolife, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1145, 1160 [2 Cal.Rptr.3d 396] [tissue bank deemed "health care provider" under Code Civ. Proc., § 425.13 "because it dispenses human tissue for transplantation and provides tissue-related services that are identified with human health"]; *Johnson v. Superior Court* (2002) 101 Cal.App.4th 869, 881 [124 Cal.Rptr.2d 650] [sperm bank is health care provider under Code Civ. Proc., § 425.13 because it "dispenses a product (sperm), and provides a service (provision of donor sperm to health care practitioners and their clients)" that is " 'inextricably identified with the health of humans' "]; *Alcott Rehabilitation Hospital v. Superior Court* (2001) 93 Cal.App.4th 94, 99–100 [112 Cal.Rptr.2d 807] [skilled nursing facility *is* health care provider under MICRA]; *Coe v. Superior Court* (1990) 220 Cal.App.3d 48, 53 [269 Cal.Rptr. 368] [blood bank is a health care provider since it "dispenses a product and provides a service inextricably identified with the health of humans"]; see also *Taylor v. U.S.* (9th Cir. 1987) 821 F.2d 1428, 1431–1432 [federal hospital is a health care provider under MICRA although exempt from state licensing].) The services that EMT's provide to patients are "inextricably identified" with the health of patients, and an ambulance company vicariously assumes the same standing with such patients through its licensed employees.

---

[7] However, because the plaintiff's status as a prisoner was also undisputed, the Supreme Court held the prisoner's time to sue a health care provider could be extended by incarceration up to a maximum of three years from the time of injury. (*Belton, supra,* 20 Cal.4th at p. 932.)

## 2. *Negligent Operation of an Ambulance Constitutes "Professional Negligence"*

Although we decide that EMT's are health care providers within the meaning of MICRA, in order for MICRA to apply EAS must satisfy the second prong and show the alleged conduct falls within the definition of "professional negligence."

■ In the trial court, appellant argued that an EMT-I is statutorily defined as "an individual trained in all facets of basic life support." (Health & Saf. Code, § 1797.80.) He urged that "[t]he negligent conduct upon which [appellant] brings his action . . . is not related to any 'facets of basic life support', but rather the negligence of the [EMT's] in the operation of the ambulance vehicle." Therefore, appellant asserted, EMT's were "no more subject to MICRA than is any other driver of a vehicle who negligently operates the vehicle, causing injury to third parties." On appeal, appellant contends the only "services" for which EMT's are licensed as professionals are *"medical* services—not driving a vehicle." We hold, as a matter of law, that the act of operating an ambulance to transport a patient to or from a medical facility is encompassed within the term "professional negligence."

■ The MICRA statutes define " 'professional negligence' " as that negligence that occurs while the health care provider is providing services that are "within the scope of services for which the provider is licensed." (Civ. Code, §§ 3333.1, subd. (c)(2), 3333.2, subd. (c)(2); Code Civ. Proc., §§ 340.5, 364, subd. (f)(2), 667.7, subd. (e)(4), 1295, subd. (g)(2); Bus. & Prof. Code, § 6146, subd. (c)(3).) The relevant test is not the degree of skill required, but whether the negligence occurred in the rendering of services for which a provider is licensed. (*Williams v. Superior Court* (1994) 30 Cal.App.4th 318, 324–325 [36 Cal.Rptr.2d 112]; see also *Johnson v. Superior Court, supra,* 101 Cal.App.4th at p. 884; *Murillo v. Good Samaritan Hospital* (1979) 99 Cal.App.3d 50, 57 [160 Cal.Rptr. 33], disapproved in part by *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1002 [35 Cal.Rptr.2d 685, 884 P.2d 142]; see *Central Pathology Service Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal.4th 181, 191 [10 Cal.Rptr.2d 208, 832 P.2d 924] ["professional negligence" defined as applying to injury "directly related to the professional services provided by the health care provider"].) Although the act of operating an ambulance may be performed by someone having no special knowledge, skill or care as a member of the medical profession, this does not mean the employees here in question were not acting as health care providers in transporting the patient to a medical facility.

■ The EMS Act defines emergency medical services in terms of the services " 'utilized in responding to a medical emergency.' " (*Schaefer's Ambulance Service v. County of San Bernardino, supra*, 68 Cal.App.4th at p. 584.) Significantly, "emergency" is defined as "a condition or situation in which an individual has a need for immediate medical attention, or where the *potential* for such need is perceived by emergency medical personnel or a public safety agency." (Health & Saf. Code, § 1797.70, italics added.) Accordingly, "emergency ambulance service" encompasses all services rendered by emergency ambulances, even if the ambulance is engaged in nonemergency interfacility transfers. (*Schaefer's Ambulance Service v. County of San Bernardino, supra*, at p. 589.) "Emergency ambulance services" turns on whether that level of services is *available*, not on whether the particular patient actually needs that level of services. (*Id.* at pp. 589–590.)

Appellant argues that an EMT's "professional services" can extend only to those services for which the EMT is *licensed*, and the only "services" for which EMT's are licensed as professionals are medical services, such as basic life support and providing CPR (cardiopulmonary resuscitation). We disagree for two reasons: EMT's *are* licensed to provide transport to patients and, in any case, the term "professional services" encompasses more than the distinct services that a health care provider is licensed to perform.

As respondent notes, California statutes and administrative codes differentiate between drivers of regular autos and drivers of ambulances. Ambulance drivers are governed by special statutory schemes and rules, including special certification requirements. Health and Safety Code section 1797.160 provides that "[n]o owner of a[n] . . . ambulance shall permit the operation of the ambulance in emergency service unless the attendant on duty . . . or, if there is no attendant on duty . . . , the operator, possesses evidence of that specialized training as is reasonably necessary to ensure that the attendant or operator is competent to care for sick or injured persons who may be transported by the ambulance, as set forth in the emergency medical training and educational standards for ambulance personnel established by the authority pursuant to this article."

■ The driver of an ambulance must be certified to do so by the Department of Motor Vehicles as either an EMT-I or a trainee during the first year of training as an EMT-I. Vehicle Code section 12527, subdivision (a) provides that "every ambulance driver responding to an emergency call or transporting patients shall . . . possess a valid ambulance driver certificate, and be trained and competent in ambulance operation and the use of safety and emergency care equipment required by the California Code of Regulations governing ambulances." Vehicle Code section 12527, subdivision (d)(1) requires that "[e]very ambulance driver shall have been trained to assist the

ambulance attendant in the care and handling of the ill and injured." With certain exceptions not applicable here, Vehicle Code section 12527, subdivision (d)(1) further provides that "the driver of a California-based ambulance shall, within one year of initial issuance of the driver's ambulance driver certificate, possess a certificate or license evidencing compliance with the emergency medical training and educational standards established for ambulance attendants by the Emergency Medical Service Authority." An ambulance driver therefore must be an EMT or EMT trainee.

Health and Safety Code section 1797.170 directs the EMS Authority to establish minimum standards and promulgate regulations for the training and scope of practice for EMT-I's. (Health & Saf. Code, §§ 1797.54, 1797.170, subd. (a).) The EMS Authority in turn has promulgated standards for the licensing of EMT-I's in the California Code of Regulations. Such regulations specifically provide that EMT-I's are licensed to transport the sick or injured or to make interfacility transfers. Specifically, the EMS Authority has ordained that "[d]uring training, while at the scene of an emergency, *during transport of the sick or injured, or during interfacility transfer*, a supervised EMT-I student or certified EMT-I is authorized to do any of the following: [¶] . . . [¶] (11) *Transport patients*." (Cal. Code Regs., tit. 22, § 100063, subd. (a)(11), italics added.) The regulations further provide that, with exceptions not applicable here, "the attendant on an ambulance operated in emergency service, or the driver if there is no attendant, shall possess a valid and current California EMT-I certificate. . . ." (Cal. Code Regs., tit. 22, § 100062, subd. (a).) The regulations also make clear that "[t]he purpose of an EMT-I training program shall be to prepare individuals to render prehospital basic life support at the scene of an emergency, *during transport of the sick and injured, or during interfacility transfer . . . .*"[8] (Cal. Code Regs., tit. 22, § 100065, subd. (a), italics added.) Appellant's claim that operating an ambulance falls outside the activities for which EMT-I's are licensed therefore lacks any merit.

Moreover, we disagree with appellant's further claim that "professional negligence" does not encompass operation of an ambulance, whether as a driver or as an attendant. As previously noted, courts have broadly construed "professional negligence" to mean negligence occurring during the rendering of services for which the health care provider is licensed. (*Palmer v. Superior Court* (2002) 103 Cal.App.4th 953, 957 [127 Cal.Rptr.2d 252] [negligent recommendation in utilization review]; *Johnson v. Superior Court, supra,* 101 Cal.App.4th at pp. 884–885 [negligence in interviewing and approving sperm bank donor]; *Bellamy v. Appellate Department* (1996) 50 Cal.App.4th 797, 808 [57 Cal.Rptr.2d 894] [failure to secure rolling X-ray

[8] Since EMT-II's and EMT-P's are licensed to perform all the duties EMT-I's are licensed to perform, this would hold true for all EMT's. (See Health & Saf. Code, §§ 1797.82, 1797.84.)

table]; *Williams v. Superior Court, supra,* 30 Cal.App.4th at pp. 323–324 [failure to warn of violent patient]; *Bell v. Sharp Cabrillo Hospital* (1989) 212 Cal.App.3d 1034, 1051–1052 [260 Cal.Rptr. 886] [failure to screen adequately competency of medical staff]; *Murillo v. Good Samaritan Hospital, supra,* 99 Cal.App.3d at p. 57 [leaving patient unattended and unrestrained on gurney]; see also *Taylor v. U.S., supra,* 821 F.2d at p. 1432 [negligent disconnection of ventilator, "regardless of whether separation was caused by the ill-considered decision of a physician or the accidental bump of a janitor's broom"].) An EMT's operation of an ambulance qualifies as professional negligence when the EMT is rendering services for which he or she is licensed or when a claim for damages is directly related to the provision of ambulance services by the EMT.

Rendering ambulance services is like the type of services described in *Bellamy v. Appellate Department, supra,* 50 Cal.App.4th at page 808, in which the court observed: "[A]n X-ray technician may perform a variety of tasks, such as assisting the patient onto the table, manipulating the table into one or more desired positions, instructing the patient to move from one position to another, activating the X-ray machine, removing the photographic plates, assisting the patient from the table, etc. Some of those tasks may require a high degree of skill and judgment, but others do not. Each, however, is an integral part of the professional service being rendered." An EMT similarly performs a number of tasks in transporting a patient to a hospital, any one of which might result in a claim of negligence.

Viewing the undisputed facts in the present case, we determine as a matter of law that the services rendered by the EMT-I's in this action were directly related to the manner in which professional services were provided. (*Central Pathology Service Medical Clinic, Inc. v. Superior Court, supra,* 3 Cal.4th at pp. 191–192.) The accident occurred while EAS's employees were transporting the patient from one hospital to another, activities for which the ambulance driver and attendant were licensed. An integral part of the duties of an EMT includes transporting patients and driving or operating an ambulance.

That appellant was not a patient does not affect application of MICRA. By their terms, MICRA statutes apply to negligent conduct by a health care provider in the rendering of professional services and is not limited to actions by the recipient of professional services. (*Hedlund v. Superior Court* (1983) 34 Cal.3d 695, 704 [194 Cal.Rptr. 805, 669 P.2d 41]; *Palmer v. Superior Court, supra,* 103 Cal.App.4th at pp. 964–965; *Williams v. Superior Court, supra,* 30 Cal.App.4th at pp. 323–324; *Atkins v. Strayhorn* (1990) 223 Cal.App.3d 1380, 1394–1396 [273 Cal.Rptr. 231].) Indeed, MICRA limitations apply "to any foreseeable injured party, including patients, business invitees, staff members or visitors, provided the injuries alleged arose out of professional negligence." (*Williams, supra,* at p. 324.) As applied to the present facts, it is

foreseeable as a matter of law that a police officer accompanying an arrestee in an ambulance might be injured in the operation of the ambulance.

The trial court therefore did not err in ruling appellant's action is subject to MICRA limitations.

### 3. *Evidence of Collateral Source Payments Was Properly Admissible*

The collateral source rule provides that if an injured party has received some compensation for his or her injuries from a source wholly independent of the tortfeasor, the payment should not be deducted from damages that the plaintiff is otherwise entitled to collect from the tortfeasor. (*Hrnjak v. Graymar, Inc.* (1971) 4 Cal.3d 725, 729 [94 Cal.Rptr. 623, 484 P.2d 599]; *Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 9 [84 Cal.Rptr. 173, 465 P.2d 61].)

Civil Code section 3333.1 modifies the collateral source rule in medical negligence cases. In an action for personal injury against a health care provider based upon professional negligence, the defendant may elect to introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury from collateral sources such as health insurance, disability insurance or workers' compensation. (Civ. Code, § 3333.1, subd. (a).) Civil Code section 3333.1 allows the jury to decide how to apply such evidence in assessing damages. (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 506 [93 Cal.Rptr.2d 97].)

As we have discussed, this action falls within the provisions of MICRA. Therefore, it was proper for EAS to introduce, and for the trial court to permit, evidence of collateral source payments made to appellant. (Civ. Code, § 3333.1, subd. (a); *Fein v. Permanente Medical Group* (1985) 38 Cal.3d 137, 165 & fn. 21 [211 Cal.Rptr. 368, 695 P.2d 665]; see *Cox v. Superior Court* (2002) 98 Cal.App.4th 670, 674 [120 Cal.Rptr.2d 45].)

Since evidence of collateral source payments was properly admissible, we need not address EAS's claim that such evidence was relevant only to damages and hence could not have had any effect on the issue of liability. Nor do we reach appellant's contention that erroneous admission of collateral payments evidence was prejudicial as a matter of law.

## DISPOSITION

The judgment is affirmed. Respondent is to recover costs on appeal.

Cooper, P. J., and Egerton, J.,[*] concurred.

Appellant's petition for review by the Supreme Court was denied May 14, 2008, S162318.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.