Filed 11/29/22  King v. McMichael CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| FRED KING, as Successor in Interest, etc.,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>KENDAL MARIE McMICHAEL et al.,<br><br>　　　Defendants and Respondents. | B322579<br><br>(Santa Clara County Super. Ct. No. 19CV358182) |

　　　APPEAL from a judgment of the Superior Court of Santa Clara County, Sunil R. Kulkarni, Judge.  Affirmed.

　　　Law Office of Brian Beckwith, Brian Beckwith; Ball Law Corporation and Jonathan Ball for Plaintiff and Appellant.

　　　Manning & Kass, Ellrod, Ramirez, Trester, David V. Roth, Elise Dvorochkin and Mark R. Wilson for Defendants and Respondents Kendal Marie McMichael and KMA Emergency Services, Inc.

　　　_____

California's statute of limitations governing a personal injury claim is two years. (Code Civ. Proc., § 335.1.)[1] However, pursuant to section 340.5, part of the Medical Injury Compensation Reform Act (MICRA), a personal injury action "against a health care provider based upon such person's alleged professional negligence" must be brought within three years after the date of injury or one year after the plaintiff discovers, or should have discovered, the injury, whichever occurs first. If a certified emergency medical technician (EMT) transporting a patient to a hospital in an ambulance injures an individual in another vehicle as a result of the EMT's negligent driving, does a one-year or two-year limitations period apply to the injured party's lawsuit?

The trial court in Rebecca Ann King's personal injury lawsuit against EMT Kendal Marie McMichael and ambulance company KMA Emergency Services, Inc. entered judgment in favor of McMichael and KMA after granting their motion for summary judgment, ruling King's complaint, filed more than one year after a KMA ambulance driven by McMichael collided with a car in which King was a passenger, was time-barred. On appeal Fred King, King's successor in interest,[2] contends the

---

[1]  Statutory references are to this code unless otherwise stated.

[2]  Rebecca King died shortly after briefing was completed in her appeal. We granted the motion of her father, Fred King, to substitute as a party in her place pursuant to California Rules of Court, rule 8.36(a). For simplicity, we continue to use King to refer not only to Rebecca King but also to appellant Fred King when describing the arguments being made for reversal of the judgment.

MICRA limitations statute does not apply to King's "garden variety" motor vehicle claim and the lawsuit was timely under section 335.1.

King on appeal does not argue that McMichael was not providing medical care—a professional health care service—by transporting the patient to the hospital. The allegedly negligent driving occurred in performing that professional medical service—that is, McMichael was negligent in carrying out the duties she owed as an EMT to her patient. King was injured as a result of that professional negligence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Accident and the Complaint*

According to the facts undisputed on appeal, KMA deploys ambulances and medical professionals throughout the San Francisco Bay Area. At the time of the incident McMichael was a certified EMT with KMA. She had applied, and was approved, for an "EMC System Identification Badge," a prerequisite to working in Santa Clara County as an emergency medical provider. She was not, however, certified or licensed by the Department of Motor Vehicles specifically as an ambulance driver: McMichael had a Class C California driver's license that did not have an "AMB" endorsement and possessed no other permit or license for the operation of a motor vehicle.

On November 11, 2017 McMichael was transporting a patient in a KMA ambulance to a hospital in Santa Clara. The ambulance was traveling at 30 miles per hour, and neither its siren nor its lights were activated.

King was a passenger in a vehicle that had come to a complete stop on Highway 87 (SR-87) in San Jose due to traffic conditions. McMichael's ambulance rear-ended King's vehicle,

3

pushing it into the car in front of it. At the scene McMichael admitted she had not noticed traffic had stopped. King was injured as a result of the accident. A nurse accompanying McMichael continued to care for the patient until another emergency vehicle arrived to transport the patient to the hospital.

On November 6, 2019 King sued McMichael and KMA alleging a single cause of action for motor vehicle negligence. Specifically, the complaint alleged McMichael and KMA "negligently owned, maintained, entrusted, operated, and otherwise negligently acted and failed to act, all with respect to a certain motor vehicle, so as to cause said vehicle to collide with another vehicle."

2. *The Summary Judgment Motion and King's Opposition*

McMichael and KMA moved for summary judgment, arguing King's complaint, filed more than a year after King discovered or should have discovered any injury, was time-barred under MICRA's one-year limitations period. In support McMichael and KMA relied in part on *Canister v. Emergency Ambulance Service, Inc.* (2008) 160 Cal.App.4th 388 (*Canister*) to argue they were health care providers for purposes of MICRA and McMichael, as a certified and licensed EMT transporting a patient in an ambulance, was rendering professional medical services at the time of the accident.

With her opposition King included evidence that there was no insurance policy in effect through which McMichael might be insured for liability arising from the collision and the only insurance policy that might insure KMA for the accident was an automobile liability policy.

4

Relying on the Supreme Court's decision in *Flores v. Presbyterian Intercommunity Hospital* (2016) 63 Cal.4th 75 (*Flores*) and two court of appeal cases decided after *Flores*, King argued *Canister, supra,* 160 Cal.App.4th 388 was no longer controlling authority. Instead, she insisted, a court determining the potential applicability of MICRA's limitations provision needed to distinguish between a professional negligence claim alleging a breach of a professional obligation to patients, and an ordinary negligence claim involving a breach of duty owed to the general public. In this case, she argued, McMichael's negligence related to the violation of generally applicable traffic laws, which govern all California drivers, and "the violator just happens to be an EMT." MICRA did not apply, she continued, when, as here, there was no nexus between the plaintiff and the patient receiving treatment from the health care professional; the EMT was neither licensed nor certified as an ambulance driver; and the cost of medical malpractice insurance—the rationale for MICRA's enactment—had nothing to do with the case because the only insurance policy covering the accident was an automobile liability policy.

3. *The Trial Court's Order and the Entry of Judgment*

The trial court granted McMichael and KMA's motion, concluding the one-year limitations period of section 340.5 applied to King's action.[3] King's action was based on alleged professional negligence, the court ruled, because, "at the time of the incident, McMichael was engaged in the rendering of

---

[3] King does not dispute McMichael and KMA's argument she should have discovered any injuries within one year of the accident.

5

professional services for which she was licensed. And since McMichael, an employee of KMA, was engaged in such services, the same is true for KMA." Relying on *Canister*, *supra*, 160 Cal.App.4th 388 after concluding the case had not been overruled by *Flores*, *supra*, 63 Cal.4th 75, the court found, "[A] core function of an EMT's job is to transport patients to hospitals," and "EMT's like McMichael are licensed to transport patients." While clarifying the professional service for which McMichael was licensed was transporting a patient to a hospital, the court also stated McMichael's allegedly negligent driving fell within MICRA's scope. In the court's view, that King was not McMichael's patient was inconsequential.

The court entered judgment in favor of McMichael and KMA. King filed a timely notice of appeal.

## DISCUSSION

### 1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) A defendant may bring a motion on the ground there is a complete defense to the action (§ 437c, subds. (o)(2) & (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849), including on the ground the action is barred by the statute of limitations, an affirmative defense. (See, e.g., *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 405 ["we are of the view that it is indeed the case that there was no triable issue of material fact and that Upjohn was entitled to judgment as a matter of law based on the statute of limitations"]; see also *Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 945 ["statute of limitations is an affirmative

defense"].)  Once the defendant has met his or her burden of showing the existence of a complete defense, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to" the defense.  (§ 437c, subd. (p)(2); *Aguilar*, at p. 849; see *Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1484-1485 [when a defendant moves for summary judgment, "the burden shifts to the plaintiff to show there is one or more triable issues of material fact regarding the defense after the defendant meets the burden of establishing all the elements of the affirmative defense"].)

We review a grant of summary judgment de novo (*Samara v. Matar* (2018) 5 Cal.5th 322, 338) and, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in favor of that party (*Weiss v. People ex rel. Dept. of Transportation* (2020) 9 Cal.5th 840, 864), decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.)

Questions of statutory construction are also reviewed de novo. (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041; *Kirk v. Ratner* (2022) 74 Cal.App.5th 1052, 1060.)  "Our primary task 'in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose.  [Citation.]  We consider first the words of a statute, as the most reliable indicator of legislative intent.  [Citation.]'  [Citation.]  We construe the statute's words in context, harmonizing statutory provisions to avoid absurd results.  [Citation.]  If the statutory text is susceptible to more than one reasonable construction, we may consider extrinsic aids such as

legislative history to facilitate our interpretative analysis." (*California Building Industry Assn.*, at p. 1041.*)*

    2. *Section 340.5 and* Canister

    Section 340.5 limits the period to commence "an action for injury or death against a health care provider based upon such person's alleged professional negligence." Subdivision (1) of section 340.5 defines "health care provider" to include any person licensed or certified pursuant to various identified provisions of the Business and Professions Code and the Health and Safety Code, which included mobile intensive care paramedics when MICRA was enacted.[4] Subdivision (2) defines "professional negligence" as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services

---

[4]     EMT's are now certified pursuant to Division 2.5 of the Health and Safety Code, Emergency Medical Services, which is not one of the portions of the Health and Safety Code identified in Code of Civil Procedure section 340.5, subdivision (1). However, Health and Safety Code section 1797.4 provides, "Any reference in any provision of law to mobile intensive care paramedics subject to former Article 3 (commencing with Section 1480) of Chapter 2.5. of Division 2 shall be deemed to be a reference to persons holding valid certificates under this division as an EMT-I, EMT-II, or EMT-P." (See *Canister*, *supra*, 160 Cal.App.4th at pp. 396-399, 402.) Although disputing the scope of the duties for which McMichael was licensed or certified, King does not contend McMichael was not a health care provider within the meaning of MICRA.

8

for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital."

*Canister*, *supra*, 160 Cal.App.4th 388 involved a police officer accompanying an arrestee in the rear of an ambulance who was injured when the ambulance hit a curb. A licensed EMT employed by the ambulance company was driving while another employee, also a licensed EMT, attended to the arrestee. The officer alleged the ambulance was driven negligently and neither employee had told him seatbelts were available. The issue on appeal was whether the trial court had erred in ruling the officer's negligence action was subject to MICRA's restrictions.[5] Division Eight of this court held there was no error. (*Id*. at pp. 392-394.)

After concluding EMT's are health care providers under MICRA,[6] the court of appeal in *Canister* held "the act of operating an ambulance to transport a patient to or from a medical facility is encompassed within the term 'professional negligence.'" (*Canister*, *supra*, 160 Cal.App.4th at p. 404.) Pointing to section 340.5, subdivision (2)'s definition of professional negligence, the court explained the "relevant test is not the degree of skill required, but whether the negligence occurred in the

---

[5] The particular aspect of MICRA at issue in *Canister* was Civil Code section 3333.1's modification of the collateral source rule in medical negligence cases. Determining whether the MICRA statute of limitations applies does not require a different analysis.

[6] See footnote 4.

rendering of services for which a provider is licensed." (*Canister*, at p. 404.) [7]

While acknowledging a person having "no special knowledge, skill or care as a member of the medical profession" may operate an ambulance, *Canister* stated that fact did not preclude a determination the employees in the case before it were "acting as health care providers in transporting the patient to a medical facility." (*Canister*, *supra*, 160 Cal.App.4th at p. 404.) *Canister* continued, "The EMS Act [Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act (Health & Saf. Code, § 1797 et seq.)] defines emergency medical services in terms of the services '"utilized in responding to a medical emergency."' [Citation.] Significantly, 'emergency' is defined as 'a condition or situation in which an individual has a need for immediate medical attention, or where the potential for such need is perceived by emergency medical personnel or a public safety agency.' [Citation.] Accordingly, 'emergency ambulance service' encompasses all services rendered by emergency ambulances, even if the ambulance is engaged in nonemergency interfacility transfers." (*Id*. at p. 405.)

---

[7] *Canister* also held, under the doctrine of respondeat superior, "MICRA applies to an employing entity held vicariously liable for the professional negligence of its agents, if such agents are health care providers. . . . [T]he vicariously liable employer is entitled to invoke against the injured plaintiff whatever limitations on liability are available to its health care provider employee." (*Canister*, *supra*, 160 Cal.App.4th at p. 395, fn. 4.) King does not challenge the trial court's conclusion that, if MICRA's one-year statute of limitations applies to her lawsuit, it applies to both McMichael and KMA.

Responding to the police officer's contention the statutory phrase "professional services" extended only to those services for which an EMT was licensed and the only services for which EMT's were licensed as professionals were medical services, *Canister* stated, "EMT's *are* licensed to provide transport to patients" and, in any event, professional services included "more than the distinct services that a health care provider is licensed to perform." (*Canister, supra*, 160 Cal.App.4th at p. 405.) *Canister* explained regulations promulgated by the Emergency Medical Services Authority, which was ""responsible for the coordination and integration of all state activities concerning emergency medical services"" (*id.* at p. 397), specifically provide that, during transport of the sick or injured, or during interfacility transfer, a certified EMT is authorized to "[t]ransport patients." (*Id.* at p. 405.) *Canister* concluded an EMT's alleged negligence in operating an ambulance qualifies as professional negligence "when the EMT is rendering services for which he or she is licensed or when a claim for damages is directly related to the provision of ambulance services by the EMT." (*Id.* at p. 407.) Finally, *Canister* concluded the fact the officer was not a patient did not affect MICRA's applicability: "By their terms, MICRA statutes apply to negligent conduct by a health care provider in the rendering of professional services and is not limited to actions by the recipient of professional services," citing, among other cases, *Hedlund v. Superior Court* (1983) 34 Cal.3d 695, 704. (*Canister*, at p. 407.)

### 3. Flores

Catherine Flores was injured when the rail on her hospital bed collapsed. Her doctor had ordered the rail raised after an assessment of Flores's condition. Flores sued the hospital for

negligent failure to inspect and maintain the equipment. The issue in *Flores*, *supra*, 63 Cal.4th 75 was whether Flores's claim was governed by MICRA's limitations period or the two-year period in section 335.1 for ordinary personal injury actions—more specifically, whether the alleged negligent act or omission occurred "in the rendering of professional services" for purposes of section 340.5 and, as such, constituted professional negligence. The Supreme Court concluded it was. (*Flores*, at pp. 79, 84.)

Flores argued the term "professional services" meant only tasks requiring a specialized degree of medical skill and the negligent maintenance of hospital equipment and premises could not qualify as negligence in the rendering of professional services. The hospital, in contrast, argued the term meant any services for which the health care provider was licensed, including those under general state licensing requirements for hospitals to maintain premises in good repair. Any failure to use reasonable care in maintaining equipment and premises, it contended, fell within the scope of MICRA. (*Flores*, *supra*, 63 Cal.4th at pp. 84-85.)

The Supreme Court rejected both parties' positions as too extreme. Although Flores was correct the phrase "professional services" ordinarily means ""'services . . . which can be judged against the skill, prudence, and diligence commonly possessed'" by other members of the profession," which in the health care context meant medical care, the Court held, "[T]his does not mean that section 340.5 applies only to those specific tasks that require advanced medical skills and training. A medical professional or other hospital staff member may commit a negligent act in rendering medical care, thereby causing a patient's injury, even where no particular medical skills were

required to complete the task at hand.  A hospital's negligent failure to prevent a patient from becoming separated from an oxygen ventilator, for example, occurs in the 'rendering of professional services' (§ 340.5, subd. (2)), 'regardless of whether separation was caused by the ill-considered decision of a physician or the accidental bump of a janitor's broom.'"  (*Flores*, *supra*, 63 Cal.4th at pp. 85-86.)

The Court also declined to accept the hospital's approach, explaining, "It would . . . sweep in not only negligence in performing the duties that hospitals owe to their patients in the rendering of medical diagnosis and treatment, but negligence in performing the duties that hospitals owe to all users—including personnel and visitors—simply by virtue of operating a facility that is open to the public.  [Citation.]  It would mean, for example, that section 340.5 would apply to a visitor's action for injuries resulting from a custodian's negligence in leaving a broom on a hallway floor, or a doctor's action against the hospital for failure to place a warning sign on a wet, recently mopped floor."  (*Flores*, *supra*, 63 Cal.4th at p. 86.)  "Rather," the Court stated, "the special statute of limitations for professional negligence actions against health care providers applies only to actions alleging injury suffered as a result of negligence in rendering the professional services that hospitals and others provide by virtue of being health care professionals: that is, the provision of medical care to patients."  (*Id*. at p. 88.)

Accordingly, the Court concluded, whether negligence in maintaining hospital equipment or premises constituted professional negligence depended on the nature of the relationship between the equipment or premises, on the one hand, and the provision of medical care, on the other:  "[I]f the act

13

or omission that led to the plaintiff's injuries was negligence in the maintenance of equipment that, under the prevailing standard of care, was reasonably required to treat or accommodate a physical or mental condition of the patient, the plaintiff's claim is one of professional negligence under section 340.5." (*Flores, supra*, 63 Cal.4th at p. 88.) Because Flores's injuries resulted from the hospital's alleged negligence in the use or maintenance of equipment that was "integrally related" to her medical care, the Court determined the negligence occurred in the rendering of professional services and was thus professional negligence within the meaning of section 340.5. (*Flores*, at p. 89.)

> 4. *The Trial Court Properly Granted the Motion for Summary Judgment*

On appeal King first argues McMichael's allegedly negligent driving did not constitute professional negligence because she was not licensed to drive an ambulance while transporting patients—that is, McMichael could not have been rendering professional services "within the scope of services for which the provider is licensed," as required by section 340.5, subdivision (2). In support King relies on various provisions of the Vehicle Code and other authorities, including an Ambulance Driver's Handbook issued by the Department of the California Highway Patrol pursuant to Vehicle Code section 2512, subdivision (d),[8] that indicate an ambulance driver transporting a

---

[8] We grant King's unopposed request to take judicial notice of the Ambulance Driver's Handbook, an official act of the executive department of the State of California. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).)

14

patient must possess an ambulance driver certificate issued by the Department of Motor Vehicles (DMV). King contends *Canister*, and thus the trial court, erred in concluding all EMT's are licensed to drive an ambulance while transporting a patient.[9]

The issue before us, of course, is not whether each point made by our Division Eight colleagues in *Canister* was correct or survives the Supreme Court's decision in *Flores*, but whether McMichael's allegedly negligent driving comes within section 340.5's definition of alleged professional negligence. In that regard, as the *Canister* court explained, whether or not an EMT is specially licensed to drive an ambulance, the regulations governing the basic scope of practice for EMT's expressly include transporting patients. (Cal. Code Regs., tit. 22, § 100063, subd. (a)(8)(J) ["(a) During training, while at the scene of an emergency, during transport of the sick or injured, or during interfacility transfer, a certified EMT or supervised EMT student is authorized to do any of the following: [¶] . . . [¶] (8) Provide initial prehospital emergency care to patients, including, but not limited to: [¶] . . . [¶] (J) Transport patients"]; see *Canister*, *supra*, 160 Cal.App.4th at p. 406.) Although McMichael's lack of an ambulance driver certificate certainly could be relevant to

---

[9] According to the Ambulance Driver's Handbook, "Every driver of an ambulance responding to an emergency call or transporting a patient shall be at least 18 years of age, hold a valid California Driver License, possess a valid ambulance driver certificate issued by the Department of Motor Vehicles (DMV), and be trained and competent in ambulance operation and the use of safety and emergency care equipment." (Dept. of the Cal. Highway Patrol, Highway Patrol Handbook 82.4, Ambulance Driver's Handbook (rev. Jan. 2015) p. 2-3; see Veh. Code, § 12527, subd. (a).)

15

resolving issues of liability, it is immaterial for purposes of determining the applicable statute of limitations. The plain meaning of section 340.5, subdivision (2)'s requirement that the professional services rendered fall within the scope of the health care provider's license is that the pertinent license is the one described in section 340.5, subdivision (1)—here, McMichael's EMT license.

That the actual driving of the ambulance, like the maintenance of a hospital bed rail, may not require any special medical knowledge or skill does not mean King's claim falls outside the ambit of section 340.5. (See *Flores*, *supra*, 63 Cal.4th at pp. 85-86; see also *Mitchell v. Los Robles Regional Medical Center* (2021) 71 Cal.App.5th 291, 298 [section 340.5 applied to personal injury action brought by emergency room patient who fell when allowed to walk to the restroom unattended; "[w]e recognize that accompanying someone to the restroom is not a sophisticated medical procedure. But that is not determinative. Section 340.5 applies to more than tasks that 'require advanced medical skills and training'"].) King does not argue on appeal that transporting the patient to the hospital—determined by the trial court to constitute the professional service being performed by McMichael—did not constitute the rendering of medical care.[10]

---

[10] We have reservations about a conclusion that driving an ambulance constitutes medical care qualifying as a professional service for purposes of Code of Civil Procedure section 340.5—at least when, as here, the driver has not activated the ambulance's lights and siren. Although, as *Canister*, *supra*, 160 Cal.App.4th at page 405, pointed out, Health and Safety Code section 1797.70 defines "emergency" as "a condition or situation in which an individual has a need for immediate medical attention, or where the *potential* for such need is perceived by emergency medical

16

McMichael's allegedly negligent driving occurred in executing that medical service—that is, she was negligent in discharging the duties she owed as an EMT to her patient—and King was injured as a result of that negligence. King's lawsuit thus comes within the ambit of section 340.5, consistent with the holdings of both *Flores, supra,* 63 Cal.4th 75 and *Canister, supra,* 160 Cal.App.4th 388.

Resisting that conclusion, King argues, even if *Canister* remains good law, the trial court erred in relying on it here because the plaintiff police officer in that case was riding in the ambulance with the patient and had some relationship to the patient (and, as a consequence, to the health care provider). King, in contrast, was not riding in the ambulance and had no prior relationship to McMichael, KMA or the patient. Thus, King argues, the claim sounded in ordinary negligence because the duty McMichael breached was "to drive with due regard for the safety of all persons using the highway" (e.g., Veh. Code, § 21056), a duty applicable to all drivers and not unique to health care providers, and King's claim did not depend on the presence of, or injury to, a patient in the ambulance. The order granting summary judgment, King asserts, failed to make the distinction mandated by *Flores, supra,* 63 Cal.4th 75 when it differentiated

---

personnel or a public safety agency," our colleagues in Division Six of this court observed in *Aldana v. Stillwagon* (2016) 2 Cal.App.5th 1 that, in light of *Flores, supra,* 63 Cal.4th 75, it was questionable whether both the EMT driving the ambulance and the EMT attending the patient were rendering professional services. (*Aldana,* at p. 7.) We need not address the issue, however, because King does not contend McMichael was not providing medical care for purposes of MICRA by transporting the patient to a hospital.

the professional obligations of hospitals in the rendering of medical care to their patients and the nonprofessional obligations of hospitals to maintain their premises in a manner preserving the safety and wellbeing of all users (*id*. at p. 87). King argues the medical treatment was not essential to her claim, which was not based on "alleged professional negligence" at all.

The essence-of-the-claim analysis of section 340.5 is arguably supported by the Supreme Court's decision in *Hedlund v. Superior Court*, *supra*, 34 Cal.3d at p. 704, which held section 340.5 applied to a cause of action for injuries suffered as a result of a therapist's negligent failure to warn a potential victim of a threat made by the therapist's patient. In reaching that conclusion the Court explained, "Under well established principles the applicable statute of limitations is determined by the nature of the right sued upon." (*Hedlund*, at p. 704.) After explaining the therapist's diagnosis of, and prediction about the danger of violence posed by, the patient—the professional service—were an "essential element of a cause of action for failure to warn" and were the "basis upon which the duty to the third party victim is found" (*id*. at p. 703), the Court concluded, "The diagnosis and the appropriate steps necessary to protect the victim are not separate or severable, but together constitute the duty giving rise to the cause of action" (*id*. at p. 704). In contrast, King essentially asserts, in the case at bar the professional service rendered to the patient was not the basis for the duty to King allegedly breached by McMichael.

This argument, while not unreasonable, is ultimately unpersuasive in light of the plain meaning of the statutory language, as well as the Supreme Court's analysis of that language in *Flores*, *supra*, 63 Cal.4th 75. First, section 340.5

refers to a negligent act or omission "in the rendering of professional services," but does not require the services to have been performed for the person bringing the claim against the health care provider.  (§ 340.5, subd. (2).)  Surely if the patient in the ambulance had been injured in the accident, MICRA would apply.  To conclude a different statute of limitations applies to an injured third party's lawsuit would at the very least be, as the Supreme Court observed in *Hedlund*, "anomalous."  (*Hedlund v. Superior Court*, *supra*, 34 Cal.3d at p. 704 ["[i]t would be anomalous . . . if a third party's cause of action based on the same negligent act were treated differently than an action by the patient"].)  Similarly, nothing in the statutory language requires the plaintiff injured by the professional negligence to have had any prior relationship to either the health care provider or the patient.  (Cf. *Aldana v. Stillwagon* (2016) 2 Cal.App.5th 1, 8 ["MICRA is not limited to suits by patients"].)

Nor is there merit to a contention King's claim was not one for a negligent act "in the rendering of professional services."  As discussed, King does not argue transporting the patient to a hospital was not professional medical care that McMichael was providing.  Necessarily, then, driving the vehicle—the act of transporting—was integral, not merely incidental, to the professional medical service.  (See *Flores*, *supra*, 63 Cal.4th at p. 88 [explaining, in concluding the allegedly negligent inspection and maintenance of hospital equipment constituted professional negligence, "A hospital's negligent failure to maintain equipment that is necessary or otherwise integrally related to the medical treatment and diagnosis of the patient implicates a duty that the hospital owes to a patient by virtue of being a health care provider"].)  Applying the reasoning in *Flores*, McMichael's

19

alleged negligence in operating the vehicle directly implicated a professional duty owed by McMichael as a health care provider; and King's claim accordingly sounded in professional negligence.

King attempts to reinforce the argument this is a lawsuit for ordinary negligence by asserting professional negligence claims against health care providers require expert testimony to establish the appropriate standard of care, but the standard of care for health care providers (the standard of other EMT's) would be irrelevant were the case to go to trial.  That argument, unsupported by any meaningful authority, assumes the conclusion.  It is far from clear on this record that expert testimony concerning the proper method of transporting patients to a hospital, and the necessary level of caution in doing so, would be inadmissible, if not required, at a trial of King's negligence claim.  (On the other hand, if "'the conduct required by the particular circumstances is within the common knowledge of the layman,'" expert testimony is not required to establish the standard of care in a medical malpractice case.  (*Landeros v. Flood* (1976) 17 Cal.3d 399, 410; accord, *Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305.)  Driving into the rear of a vehicle stopped in heavy traffic arguably violates a standard of care that is well within the common knowledge of lay jurors.)

     5. *Post-*Flores *Court of Appeal Cases Do Not Support Reversal of the Judgment*

Neither *Aldana v. Stillwagon, supra*, 2 Cal.App.5th 1 nor *Johnson v. Open Door Community Health Centers* (2017) 15 Cal.App.5th 153 (*Johnson*), cases decided after the Supreme

20

Court's decision in *Flores* and relied upon by King, supports reversal of the judgment in favor of McMichael and KMA.

In *Aldana* the defendant, an on-duty paramedic supervisor responding to a 911 call, was driving his employer's pickup truck, which had an emergency vehicle permit but could not transport patients, to the location of an injured victim to supervise the responding EMT's and provide any necessary assistance. En route the supervisor failed to make a complete stop at a red light and collided with the plaintiff's vehicle. (*Aldana v. Stillwagon*, *supra*, 2 Cal.App.5th at pp. 4-6.) Division Six of this court held driving to the third party victim did not constitute "professional services" and, as noted (see fn. 10), in the course of its opinion questioned whether *Canister*'s conclusion that the EMT driving the ambulance was rendering professional services remained good law after *Flores*. (*Id*. at p. 7.)

*Aldana*'s critique of *Canister* may well be correct. Depending on the circumstances, driving an ambulance might not be health care or professional services within the meaning of MICRA because it is a task requiring "no particular medical skills," not entirely unlike a janitor's use of a broom. But to reiterate, King does not dispute that McMichael was engaged in rendering professional medical services when she was transporting the patient to a hospital, an activity for which she was certified and which was "inextricably identified" with the health of patients. (See *Canister*, *supra,* 160 Cal.App.4th at p. 403; cf. *T.L. v. City Ambulance of Eureka, Inc.* (2022) 83 Cal.App.5th 864, 879 [there is no question defendants, an EMT and a paramedic, "were providing a medical support service" in transporting plaintiff by ambulance from a crisis stabilization unit to an inpatient psychiatric facility].) Indeed,

21

the *Aldana* court distinguished the case before it from *Canister* because it did not involve transporting a patient. (*Aldana v. Stillwagon, supra,* 2 Cal.App.5th at pp. 7-8.)

In *Johnson, supra,* 15 Cal.App.5th 153 the plaintiff, after a consultation at a health clinic, tripped on a scale partially blocking her path from a treatment room to the hall as she headed for the exit. Because the plaintiff was injured after her care was completed and alleged the placement of the scale posed a tripping hazard, implicating the clinic's duty to all users of its facility, the court of appeal held section 340.5 did not govern the action. (*Id.* at pp. 156, 160.) In reaching its conclusion the court summarized several pre-*Flores* cases, including *Canister,* and determined, to the extent still good law, they did not support application of section 340.5 to the case before it. Although suggesting *Canister*'s rationale was not fully consistent with *Flores*'s analysis, *Johnson* nevertheless observed *Canister*'s outcome was "arguably correct" because "(1) the negligent performance of tasks requiring no medical skill or training may nonetheless implicate professional medical services and trigger the application of MICRA [citation]; and (2) the EMTs who allegedly operated an ambulance without due care were rendering professional services at the time and their failure to do so competently caused the officer's injuries." (*Id.* at pp. 161-162.) Here, McMichael, who allegedly operated her vehicle with negligence, was rendering professional services (transporting a patient to the hospital) at the time; and McMichael's failure to do

so competently caused King's injuries.  *Johnson* fully supports the conclusion that section 340.5 applies in this case.

6. *King's Policy Argument Is Misplaced*

As a final argument King points out McMichael and KMA have no medical malpractice insurance that covers their liability for the injuries she suffered.[11]  Thus, King asserts, applying section 340.5 in her case does not further the purpose of MICRA, which, *Flores* explained, is a "wide-ranging statutory scheme designed to reduce the cost of medical malpractice insurance," enacted "to address 'skyrocketing malpractice premium costs.'" (*Flores*, *supra*, 63 Cal.4th at pp. 81, 86.)

King's attempt to extrapolate from an individual case to the entire emergency medical services industry is misplaced. Whether malpractice insurance is available to McMichael and KMA tells us nothing about how financial responsibility for injuries suffered in traffic accidents might affect the professional liability coverage available to EMT's and ambulance companies generally or their overall economic viability.  We do know, however, as the Supreme Court observed in *Hedlund*, that "the legislative purpose of reducing health care costs" is implicated even "[w]hen a health care provider's professional negligence results in harm to parties other than a patient."  (*Hedlund*, *supra*, 34 Cal.3d at p. 704.)

---

[11]  McMichael and KMA challenged in the trial court King's reliance on any fact concerning insurance coverage of the accident because it was not identified in her separate statement of additional material facts.  The record on appeal, which did not include any reporter's transcript of a hearing on the summary judgment motion, was silent as to the trial court's response, if any, to their argument.

## DISPOSITION

The judgment is affirmed.  McMichael and KMA are to recover their costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.