Filed 1/9/24; Certified for Publication 2/7/24 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SYMONS EMERGENCY SPECIALTIES, | E078113 |
| Plaintiff and Appellant, | (Super.Ct.No. CIVDS1516027) |
| v. | OPINION |
| CITY OF RIVERSIDE, | |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County. Thomas S. Garza, Judge. Affirmed.

Stream Kim Hicks Wrage & Alfaro, Theodore K. Stream and Jamie E. Wrage for Plaintiff and Appellant.

Phaedra A. Norton, City Attorney, Rebecca L. McKee-Riembold, Assistant City Attorney, and Brandon S. Mercer, Deputy City Attorney, for Defendant and Respondent.

1

## I. INTRODUCTION

Defendant and respondent City of Riverside (the City) regulates the provision of ambulance services operating within the City's geographic limits under the Riverside Municipal Code (RMC). As relevant to this litigation, RMC section 5.66.020 prohibits persons from operating ambulance services originating in the City without first obtaining a valid franchise or permit from the City. Plaintiff and appellant Symons Emergency Specialties (Symons) filed a civil complaint seeking declaratory and injunctive relief against the City, arguing that RMC section 5.66.020 is invalid under the Emergency Medical Services System and Prehospital Emergency Medical Care Act (EMS Act; Health and Saf. Code, § 1797 et seq.[1]).[2]

The parties do not dispute that, as a general matter, the EMS Act precludes cities from regulating the provision of emergency medical services. The only factual dispute presented in this case is whether the City regulated the administration of nonemergency ambulance services as of June 1, 1980, such that it was entitled to continue doing so under grandfathering provisions of the EMS Act. (§1797.201.) The parties tried this factual dispute in a court trial; the trial court issued a statement of decision concluding

---

[1] Undesignated statutory references are to the Health and Safety Code.

[2] Neither party's pleadings were included as part of the record in this appeal. However, the City filed a cross-complaint seeking an injunction prohibiting Symons from further operation in violation of RMC section 5.66.020. The trial court issued a preliminary injunction against Symons on the City's cross-complaint, and we upheld the trial court's issuance of the preliminary injunction on appeal in *City of Riverside v. Symons Ambulance et al.* (June 21, 2017, E064693) [nonpub. opn.] (*City of Riverside*).

2

that Symons had failed to meet its burden of proof on the issue; and judgment was entered in favor of the City.

Symons appeals, arguing that the judgment must be reversed because: (1) the trial court abused its discretion by admitting testimony of city employees regarding the interpretation of two city ordinances enacted in 1975 and 1980 (Ordinance 4183 and Ordinance 4768, respectively); (2) the trial court's factual finding that the City regulated nonemergency ambulance services as of June 1980 is not supported by substantial evidence; and (3) RMC section 5.66.020 is invalid as a matter of law because it violates federal anti-trust law. We disagree with each of these contentions and affirm the judgment.

## II. BACKGROUND

A. *The EMS Act and Section 1797.201*

" 'The EMS Act aims to achieve integration and coordination among various government agencies and EMS providers.' " (*City of Oxnard v. County of Ventura* (2021) 71 Cal.App.5th 1010, 1015.) It " 'create[s] a comprehensive system governing virtually every aspect of prehospital emergency medical services' " and " 'accomplishes this integration through what is essentially a two-tiered system of regulation.' " (*Valley Medical Transport*, *Inc v. Apple Valley Fire Protection Dist.* (1998) 17 Cal.4th 747, 754 (*Valley Medical*).) "The two tiers consist of a state Authority, which 'performs a number of different functions relating to the coordination of EMS throughout the state' (*ibid*.), and an EMS agency established by a county . . . which plans, implements, and evaluates emergency medical service systems on a countywide or multicounty basis . . . ." (*Ibid.*)

3

Generally, cities are "afforded no particular role" in administration of this local EMS agency. (*County of San Bernardino v. City of San Bernardino* (1997) 15 Cal.4th 909, 916 (*County of San Bernardino*).)

However, the EMS Act includes a "grandfathering" provision in section 1797.201. (*Valley Medical*, *supra*, 17 Cal.4th at p. 758; § 1797.201.) Section 1797.201, "allow[s] cities . . . to maintain control of the services they operated or contracted for in June 1980, and permit[s] them to make decisions as to the appropriate manner of providing those services." (*County of San Bernardino*, *supra*, 15 Cal.4th at p. 930.) The grandfathering provision permits a city to retain this administrative control "[u]ntil such time that an agreement is reached" with a county "regarding the provision of prehospital emergency medical services for that city" (§ 1797.201) but "does not require cities . . . to enter an agreement by a particular time" (*County of San Bernardino*, at p. 930).

B. *Relevant Evidence Presented at Trial*[3]

The central factual dispute identified by both parties at trial was whether the City regulated the provision of ambulance services as of June 1, 1980, such that the City was entitled to continue regulating those services under section 1797.201.

---

[3] Because the issues raised on appeal address only the validity of RMC section 5.66.020 pursuant to section 1797.201 of the EMS Act, we summarize only the evidence relevant to this issue. The trial also involved evidence of Symons's alleged violations of RMC section 5.66.020. However, on appeal, the parties do not dispute that Symons operated ambulances without first obtaining a franchise or permit with the City in violation of that ordinance.

4

1. City Ordinances

The evidence at trial included multiple ordinances adopted by the City from 1975 to the time of trial. Ordinance 4183 was adopted in 1975 and granted a franchise to Goodhew Ambulance Service (Goodhew) "to operate authorized emergency ambulance vehicles" within the City's geographic limits. Ordinance No. 4768 was adopted in March 1980, and again granted a franchise to Goodhew "to operate authorized emergency ambulance vehicles" within the City's geographic limits.

The City adopted subsequent ordinances extending the term of Goodhew's franchise through at least 1999, without substantive change to the scope or conditions of the original franchise.[4] However, Ordinance No. 16005 (Ordinance 16005), which extended the term of Goodhew's franchise from March 1985 through January 1988, was not formally adopted until after the effective date of the extension.

In September 1989, the City adopted an ordinance adding chapter 5.66 to the municipal code. This chapter provided a more comprehensive set of definitions and rules governing the operation of ambulances within the City's geographic limit, including the franchise and permit requirement set forth in section 5.66.020. However, the ordinance also expressly provided that this addition to the municipal code would not "affect the continued existence, operation and validity" of the existing franchise granted to Goodhew.

---

[4] The City did change the name of the grantee to that of successor companies who acquired Goodhew's operations through merger and acquisition.

2. Witness Testimony

The deputy fire chief of administration for the City of Riverside Fire Department testified that he was originally hired in 1993 and had been assigned as the City's ambulance administrator since 2015. His duties required him to be familiar with the statutes and ordinances pertaining to ambulance operation, as well as the City's franchise and contract agreements pertaining to ambulance operation. The deputy chief explained that, in the context of ambulance transports, the terms "emergency" and "nonemergency" are not used to describe a type or level of service. Instead, the terms refer only to whether the request for service originated through the 911 emergency system or another source. As a result, the term "emergency ambulance vehicles" as used in Ordinance 4183 includes vehicles that respond to both emergency and nonemergency calls.

A battalion chief with the City of Riverside Fire Department testified that he had been working for the City for over 20 years. Prior to working for the City, the battalion chief worked as a paramedic for Goodhew and its successor companies from 1990 through 2000. He confirmed that the distinction between "emergency" and "nonemergency" transports is based upon how the call for service originated and not the type of vehicle or service being provided. He also testified that while working as a paramedic from 1990 through 2000, he performed both emergency and nonemergency transports within the City's geographic limits on behalf of Goodhew.

A medical doctor testified that he is shareholder, current member of the board of directors, and former chief operating officer of Symons. He has been involved in the provision of emergency medical services in various capacities since 1991. Given this

6

experience, he has followed the various laws and regulations relating to the provision of EMS services. The doctor testified that "there's a lot of different definitions on emergency ambulance," but he admitted that in "the general common usage," the phrase typically describes a call for service generated through the 911 emergency call system. The doctor further explained that "in the very beginning of EMS . . .—there weren't clear definitions" describing different types of ambulances. However, "[i]n the '90s," the federal Medicare guidelines began differentiating between four different classifications of ambulance. Despite this, each type of ambulance can provide both "emergency" and "nonemergency" services.

The doctor recalled that in 2009, the City denied a request by one of Symons's predecessor companies to operate ambulances for the purpose of providing nonemergency transport within the City's geographic limits. This predecessor company later merged with Symons, but Symons did not separately reapply for a franchise or permit from the City based upon legal advice from various third party sources.

C. *Statement of Decision and Judgment*

On August 18, 2021, the trial court issued a statement of decision concluding that Symons "did not meet its burden to prove its allegations" that RMC section 5.66.020 was invalid. Judgment was entered in favor of the City, and Symons appeals from this judgment.

III.  DISCUSSION

A.  *Admission of Evidence*

The first argument advanced by Symons on appeal is that the trial court erred by permitting the deputy fire chief and battalion chief to testify that the scope of the franchise granted in Ordinance 4183 and Ordinance 4768 included both emergency and nonemergency ambulance transports.  According to Symons, this testimony was inadmissible because both witnesses lacked sufficient personal knowledge to testify on this topic as required by Evidence Code section 702.[5]  We disagree.

Generally, "the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter."  (Evid. Code, § 702.) " 'Broadly speaking, an appellate court reviews any ruling by a trial court as to the admissibility of evidence for abuse of discretion.' "  (*Meeks v. AutoZone*, *Inc.* (2018) 24 Cal.App.5th 855, 861.)  However, "[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review."  (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.)  Thus, the

---

[5]  Generally, when interpreting a statute or ordinance, "we turn first, to the words of the statute, giving them their usual and ordinary meaning.  [Citations.]  When the language of a statute is clear, we need go no further.  However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids . . . ."  (*Chaffee v. San Francisco Public Library Com.* (2005) 134 Cal.App.4th 109, 114.)  One such extrinsic aid is the municipality's interpretation of its own ordinance, which " ' "is entitled to great weight unless it is clearly erroneous or unauthorized." ' "  (*Berkeley Hills Watershed Coalition v. City of Berkeley* (2019) 31 Cal.App.5th 880, 896 (*Berkeley Hills*).)  Notably, Symons does not contend that this type of extrinsic evidence was irrelevant in this case but only that the specific witnesses offered by the City lacked the personal knowledge to offer such testimony.

trial court's factual determination that a witness possesses sufficient personal knowledge to testify on a matter is reviewed for substantial evidence.  (*People v. Lopez* (2018) 5 Cal.5th 339, 352; *Preciado v. Freightliner Custom Chassis Corp.* (2023) 87 Cal.App.5th 964, 974.)

" 'Courts interpret municipal ordinances in the same manner and pursuant to the same rules applicable to the interpretation of statutes.' " (*Harrington v. City of Davis* (2017) 16 Cal.App.5th 420, 434 (*Harrington*).)  To aid in such interpretation, a public employee may testify regarding the manner in which a statute, ordinance, or regulation has been administered or enforced.  (*County of Madera v. Superior Court* (1974) 39 Cal.App.3d 665, 674 [The construction of an ordinance by "an officer who is presumably charged with enforcement of the ordinance, is entitled to considerable weight."]; *Bernard v. City of Oakland* (2012) 202 Cal.App.4th 1553, 1571-1572 [An employee who was "personally involved in the administration and implementation of [a statute]" showed "sufficient foundation for him to testify as to his personal knowledge of the procedures and practices employed . . . in administering [the statute]" to support the "administrative interpretation of the challenged statutory language."].)

This type of testimony is relevant because "[a]n agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts" (*Yamaha Corp. of America v. State Bd. Of Equalization* (1998) 19 Cal.4th 1, 7), and the level of deference afforded to an agency interpretation depends, in part, on factors such as "indications of careful consideration by senior agency officials . . . evidence that the agency 'has consistently maintained the interpretation in question . . .' and indications

9

that the agency's interpretation was contemporaneous with legislative enactment of the statute being interpreted" (*id.* at pp. 12-13; *State Farm General Ins. Co. v. Lara* (2021) 71 Cal.App.5th 148, 184-185).  Thus, when assessing whether a witness has personal knowledge to testify regarding the City's interpretation of its own ordinance, the relevant inquiry is whether the witness has some personal knowledge regarding the manner in which the City administered or enforced the ordinance in question.

Contrary to Symons's argument, the personal knowledge need not pertain specifically to the date an ordinance or statute was enacted.  This court's discussion in *Castenada v. Holcomb* (1981) 114 Cal.App.3d 939 (*Castenada*) is instructive on this point.  In *Castenada*, we considered a dispute regarding the proper interpretation of a city charter provision originally approved in 1905.  (*Id.* at p. 945.)  In doing so, we concluded that testimony by city officials regarding the interpretation and application of the provision from 1956 onward was still relevant to the inquiry, explaining:  "[a]lthough the evidence of interpretation by city officials . . . refers only to the years from 1956 to the present, we may infer, in the absence of evidence to the contrary, that the same interpretation prevailed in earlier years."  (*Ibid.*)  We believe the reasoning in *Castenada* is equally applicable to this case.

As *Castenada* recognizes, testimony regarding how an ordinance is enforced, even well beyond the time of its original adoption, is still relevant when interpreting the language of that ordinance.  Thus, the only personal knowledge necessary to establish *admissibility* under Evidence Code section 702 is personal knowledge of the manner in which the ordinance was enforced during a time the ordinance remained effective.

10

Indeed, even when conflicting evidence is presented to show that a municipality's interpretation of an ordinance changed over time, such evidence speaks only to the weight to be given such testimony. (*Styrene Information & Research Center v. Office of Environmental Health Hazard Assessment* (2012) 210 Cal.App.4th 1082, 1099 [" '[A]n agency's vacillating practice—i.e. adopting a new interpretation that contradicts a prior interpretation—is entitled to little or no weight.' "]; *United Artists Theatre Circuit*, *Inc. v. California Regional Water Quality Control Bd.* (2019) 42 Cal.App.5th 851, 887 [court will give "little weight" to agency interpretation of statute in light of inconsistencies in agency's application of statute].) It does not render the testimony inadmissible under Evidence Code section 702.[6]

In this case, the deputy fire chief testified that he had been working for the City since 1993, and the battalion chief testified that he was employed by Goodhew from 1990 through 2000. The record shows that the substantive terms of Ordinance 4768 granting a franchise to Goodhew remained in effect through at least sometime in 1999, since

---

[6] At the time of oral argument, Symons argued that *Castenada* was wrongly decided and that our decision in that case has since been overruled by *Yamaha*. Upon review of our Supreme Court's decision in *Yamaha*, we disagree with Symons's characterization. The question presented in Yamaha was the degree of weight or deference to be given agency interpretation of a statute or regulation. (*Yamaha*, *supra*, 19 Cal.4th at p. 6.) Contrary to Symons's suggestion, there was no discussion regarding the admissibility of evidence or the manner in which a party may seek to lay the foundation for admitting an agency interpretation of a statute or regulation. Instead, *Yamaha* merely recognized that courts must "independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning" and that "an agency's interpretation is one among several tools available to the court" (*Yamaha, supra*, 19 Cal.4th at p. 7), which is consistent with the other authorities set forth in this opinion.

Goodhew's franchise was extended without substantive change to the scope of its franchise during this time period. Thus, both witnesses worked for either the City or the franchise holder for significant periods of time in which the franchise terms set forth in Ordinance 4768 remained in effect. This was substantial evidence upon which the trial court could rely to conclude that both witnesses had sufficient personal knowledge to testify regarding the scope of the franchise, and we find no abuse of discretion in the admission of this testimony.

B. *Sufficiency of the Evidence*

The second argument advanced by Symons on appeal is that there was insufficient evidence to support the trial court's determination that the City's attempts to regulate ambulance services was not preempted by the EMS Act. We conclude that Symons has forfeited this issue for failure to fairly summarize the evidence in the record and failure to tailor its arguments to the correct standard of review. Further, even in the absence of forfeiture, we would conclude that substantial evidence supports the trial court's findings.

1. Legal Principles and Standard of Review

"In reviewing a judgment based upon a statement of decision following a bench trial," we "apply a substantial evidence standard of review to the trial court's findings of fact." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) Generally, "our review begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the trial court's factual determinations." (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 501.)

However, in this case, the trial court expressly concluded that Symons did not meet its burden of proof at trial.  This was the correct allocation of the burden of proof. With respect to Symons's complaint, Symons, as the plaintiff, bore the burden of proof. (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 977 [" '[T]he general rule in California [is] that "a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief . . . that he is asserting." ' "]; *Cassady v. Morgan, Lewis & Bockius LLP* (2006) 145 Cal.App.4th 220, 234 ["[T]he plaintiff normally bears the burden of proof to establish the elements of his or her cause of action."]; Evid. Code, § 500.)  Additionally, Symons also bore the burden of proof in defense to the City's cross-claim because Symons's defense was premised upon a claim that the relevant portions of the RMC were invalid.  (*California Veterinary Medical Assn. v. City of West Hollywood* (2007) 152 Cal.App.4th 536, 548-549 ["Local ordinances within the scope of a city's traditional police powers are presumed valid:  The party challenging the ordinance has the burden of demonstrating preemption."]; *County of Del Norte v. City of Crescent City* (1999) 71 Cal.App.4th 965, 973 ["Legislative enactments are presumed to be valid; to overcome this presumption[,] the [party challenging the ordinance] must bring forth evidence compelling the conclusion that the ordinance is unreasonable and invalid."]; *Corona-Norco Unified School Dist. v. City of Corona* (1993) 17 Cal.App.4th 985, 993 [same].)

"The substantial evidence standard of review takes on a unique formulation where, as here, 'the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals." (*In re S.G.* (2021)

13

71 Cal.App.5th 654, 671.)  Under these circumstances, " ' " 'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.  [Citations.]  Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " ' "  (*Garcia v. KND Development 52*, *LLC* (2020) 58 Cal.App.5th 736, 744 (*Garcia*); *Kinder v. Capistrano Beach Care Center*, *LLC* (2023) 91 Cal.App.5th 804, 811 (*Kinder*).)  Thus, we apply this modified substantial evidence standard because Symons bore the burden of proof at trial, and the trial court expressly found that Symons did not meet its burden.

2.  Forfeiture

Initially, we conclude that Symons has forfeited its claim that the trial court's finding was not supported by substantial evidence for two, independent reasons.

First, " ' "[a]rguments should be tailored according to the applicable standard of appellate review," ' "and " '[f]ailure to acknowledge the proper scope of review is a concession of lack of merit.' "  (*Ewald v. Nationstar Mortgage*, *LLC* (2017) 13 Cal.App.5th 947, 948; *Sonic Manufacturing Technologies*, *Inc. v. AAE Systems*, *Inc.* (2011) 196 Cal.App.4th 456, 465.)  "When an appellant fails to apply the appropriate standard of review, the argument lacks legal force," and the appellant "fails to show error in the judgment."  (*People v. Foss* (2007) 155 Cal.App.4th 113, 126.)

In this appeal, Symons briefly identifies the "substantial evidence rule" as the standard of review.  However, Symons fails to appreciate that it bore the burden of proof

at trial and, as a result, has not tailored any of its arguments to the modified standard of review applicable under such circumstances.  Indeed, Symons repeatedly argues as if the City bore the burden to produce evidence at trial and the failure to do so required a finding in Symons's favor.  Even after the City identified the correct formulation of the substantial evidence standard in its respondent's brief, Symons ignored the correct standard of review and continued to argue that the City's purported failure to produce evidence at trial compelled a finding in Symons's favor.  Symons does not meet its burden to show error on appeal when it fails to tailor its arguments and, indeed, seemingly ignores, the appropriate standard of review.

Second, "it is presumed that the evidence is sufficient to support [the trier of fact's] factual findings, and it is the appellant's burden to demonstrate that it does not. . . . And in furtherance of that burden, the appellant must fairly summarize the facts in the light favorable to the judgment." (*Boeken v. Philip Morris*, *Inc.* (2005) 127 Cal.App.4th 1640, 1667.)  "To overcome the trial court's factual findings," the appellant is " 'required to set forth in [his] brief all the material evidence on the point and *not merely* [*his*] *own evidence*.  Unless this is done the error is deemed to be [forfeited].' " (*Naranjo v. Spectrum Security Services*, *Inc.* (2023) 88 Cal.App.5th 937, 946, review granted May 31, 2023, S279397; *Verranzono v. Gehl Co.* (2020) 50 Cal.App.5th 636, 652 [The failure to set forth all material evidence forfeits any substantial evidence claim.]; *Chicago Title Ins. Co. v. AMZ Ins. Services*, *Inc.* (2010) 188 Cal.App.4th 401, 415 ["If the appellant fails to fairly state all material evidence, we may deem waived any challenge based on insufficiency of the evidence."].)

The failure of Symons to provide a fair summary of the record is clear in this case. In its statement of decision, the trial court analyzed the testimony of three witnesses and explicitly referenced 30 documentary exhibits in support of its finding. Yet the summary of facts set forth in Symons's opening brief failed to specifically reference, let alone present a fair summary, of the majority of this evidence. Even when specifically arguing its substantial evidence claim, Symons described the "only admissible evidence" as consisting of two documents, despite the fact that the trial court's statement of decision expressly relied on additional items of evidence in reaching its conclusion. Symons does not meet its burden on appeal by failing to address the evidence it finds unfavorable to its position or disregarding evidence that the trial court expressly relied upon to reach its findings.

The failure to tailor arguments to the appropriate standard of review and failure to fairly summarize the evidence at trial forfeits Symons's claim that the trial court's findings were not supported by substantial evidence. Regardless, even in the absence of forfeiture, we would conclude that substantial evidence supports the trial court's findings.

3. Symons's Evidence Was Not Uncontradicted or Unimpeached

As we have already detailed, under the modified substantial evidence standard applicable to an appellant who bore the burden of proof at trial, Symons was required to show that the evidence at trial was " ' "uncontradicted and unimpeached." ' " (*Garcia*, *supra*, 58 Cal.App.5th at p. 744; *Kinder*, *supra*, 91 Cal.App.5th at p. 811.) The record does not support such a conclusion in this case.

16

It is true that, as Symons claims on appeal, Ordinance 4183 and Ordinance 4768 reference only "emergency ambulance vehicles" and do not explicitly reference the provision of nonemergency services. However, this was not the only evidence presented on the issue. The City of Riverside Fire Department deputy fire chief and battalion chief both testified that "emergency ambulance vehicles" operating under the language of this ordinance provided both emergency and nonemergency services. This testimony certainly contradicts Symons's restrictive reading of these ordinances.

Additionally, the medical doctor called as a witness by Symons admitted that there were no clear distinctions between types of ambulances in the medical profession at the time the ordinances were adopted, and further testified that, even after formal classifications for ambulances were generally accepted, the term "emergency" was not used to distinguish between a type of ambulance or type of service. This testimony also undermined Symons's proffered interpretation that the phrase "emergency ambulance vehicle" must refer only to the provision of emergency services.

Thus, the evidence upon which Symons now relies was neither uncontradicted nor unimpeached. Where the evidence is in conflict or lacks persuasive force, the trier of fact is not required to adopt the view of the evidence advanced by the party bearing the burden of proof. Therefore, Symons has not shown that reversal is warranted for lack of substantial evidence.

4. Symons's Evidence Was Not of Such Character and Weight To Compel a Finding in Its Favor

Additionally, the second prong of the modified substantial evidence standard applicable to an appellant who bore the burden of proof at trial requires Symons to show that the uncontradicted evidence was of such character and weight as to compel a finding in its favor as a matter of law.  (*Garcia*, *supra*, 58 Cal.App.5th at p. 744; *Kinder*, *supra*, 91 Cal.App.5th at p. 811.)  Here, even if we accept Symons's characterization of the record that Ordinance 4183 and Ordinance 4768 constituted the only evidence regarding the City's regulation of ambulance services as of June 1980, we do not believe this evidence would compel a finding in favor of Symons.

Under California law, "a city's interpretation of its own ordinance is ' "entitled to deference" in our independent review of the meaning or application of the law.' " (*Harrington*, *supra*, 16 Cal.App.5th at p. 434; *Berkeley Hills*, *supra*, 31 Cal.App.5th at p. 896 ["[A] city's interpretation of its own ordinance ' "is entitled to great weight unless it is clearly erroneous or unauthorized." ' "]; *Protect Our Neighborhoods v. City of Palm Springs* (2022) 73 Cal.App.5th 667, 678 [same].)  As this court has repeatedly explained, where no other evidence is presented, we will defer to a city's interpretation of its own ordinance "unless it is arbitrary, capricious or lacks any rational basis."  (*Robinson v. City of Yucaipa* (1994) 28 Cal.App.4th 1506, 1516; *Protect Our Neighborhoods*, at p. 680.) This deference is appropriate even if the language of the ordinance is susceptible to more than one reasonable interpretation.  (*Protect Our Neighborhoods*, at p. 680.)

Facially, Ordinance 4183 and Ordinance 4768 both granted a franchise to a private company to "operate authorized emergency ambulance vehicles" within the City's geographic limits. However, this court analyzed nearly identical language used in the EMS Act and concluded that the phrase " 'emergency ambulance services' . . . encompasses all services rendered by emergency ambulances [because] 'emergency' modifies 'ambulance,' not 'services.' " (*Schaefer's Ambulance Serv. v. County of San Bernardino* (1998) 68 Cal.App.4th 581, 589.) We are not the only court to adopt this interpretation. (*Canister v. Emergency Ambulance Service, Inc.* (2008) 160 Cal.App.4th 388, 405 [The phrase " 'emergency ambulance service' encompasses all services rendered by emergency ambulances, even if the ambulance is engaged in nonemergency interfacility transfers."].) Given these authorities, we cannot say that the City's interpretation of its own ordinance in this case is unreasonable. Clearly, at least one reasonable interpretation of the phrase "emergency ambulance vehicles" is that it refers to the type of vehicle covered by the franchise and not the type of services provided by those vehicles.

Thus, even if we accepted Symons's characterization of the record that Ordinance 4183 and Ordinance 4768 constituted the only evidence presented on this issue, it would have been appropriate for the trial court to defer to the City's reasonable interpretation of its own ordinances. The fact that Symons may have proffered an equally reasonable interpretation of the ordinances does not compel a finding in its favor as a matter of law, and reversal is not warranted under the substantial evidence standard of review.

19

5. The Evidence Did Not Establish the Loss of the City's Rights Under Section 1797.201

Symons also argues that, even assuming the City maintained a right to regulate nonemergency ambulance services under section 1797.201, the City lost its right to do so when its contract with the private ambulance carrier purportedly lapsed for a period of time in 1985. We disagree.

First, we do not believe that the evidence in the record supports the factual predicate for Symons's argument. Facially, the city ordinances produced at trial granted franchise extensions for the operation of ambulances from March 1980 through the time of trial. Symons points to the fact that one of the ordinances granting one such extension was not formally adopted by the City until nine months after the effective date of the extension, and argues that this constitutes evidence the City discontinued the provision of services during this time.

However, it is "a well-established principle of contract law" that "when parties agree on the material terms of a contract with the intention to later reduce it to a formal writing, failure to complete the formal writing does not negate the existence of the initial contract." (*CSAA Ins. Exchange v. Hodroj* (2021) 72 Cal.App.5th 272, 276; *Church v. Wade* (1947) 80 Cal.App.2d 412, 419 [contract exists where performed by both parties, even if not reduced to writing].) Thus, the absence of a formalized writing does not, in itself, evidence the absence of an agreement, let alone the cessation of services provided under that agreement. This is particularly true where, as here, the later formalization of the agreement expressly provides the date upon which the parties understood the

20

agreement to be deemed effective. Thus, in our view, the evidence does not support the fact upon which Symons's argument is premised.

Second, even if the evidence could be construed as a temporary lapse in contracted services, we disagree with Symons that this evidence would be sufficient to show the loss of the City's rights under section 1797.201. Under the express terms of section 1797.201, a city that contracted or provided for prehospital emergency services as of June 1, 1980, retains the obligation to provide, and right to regulate, those services "until such time that an agreement is reached" with a county. (§ 1797.201.) Thus, under a plain reading of the statute, a city cannot be considered to have relinquished its responsibilities or rights under section 1797.201 until such time as the county or local EMS agency agrees to assume responsibility for providing the services previously provided by the city.

The California Supreme Court's holding in *Valley Medical* supports this conclusion. In *Valley Medical*, a local fire district initially retained the right to continue provision of ambulance services under section 1797.201 but sold the equipment necessary to continue independently providing such services in 1984, and thereafter participated in the local EMS agency's plan for emergency ambulance transport from 1986 through 1993. (*Valley Medical*, *supra*, 17 Cal.4th at pp. 751-752.) Under these circumstances, the California Supreme Court concluded that the local fire district could not enact a new ordinance reasserting its authority to regulate emergency ambulance services. (*Id.* at pp. 750-751.) The local district's loss of its section 1797.201 rights rested on the fact that it "ceas[ed] to provide such services sometime after the passage of the EMS Act, *and* permit[ted] those services to be provided or administered by the local

21

EMS agency." (*Id.* at p. 758, italics added.)[7]  The high court reiterated the importance of both factual predicates in the summation of its holding.  (*Id.* at p. 761.)

The cannons of statutory construction also support our interpretation of section 1797.201.  When interpreting a statute, "[w]e construe the statute's words in context, harmonizing statutory provisions to avoid absurd results."  (*California Building Industry Assn. v. State Water Resources Control B.* (2018) 4 Cal.5th 1032, 1041.)  As relevant here, section 1797.201 mandates that the city or local fire district continue providing prehospital emergency medical services "[u]ntil such time that an agreement is reached." (§ 1797.201; *Valley Medical*, *supra*, 17 Cal.4th at pp. 758-759 [section 1797.201 imposes upon a city or local fire district the "*obligation* to continue to provide emergency medical services until an agreement is reached with a county"].)  Obviously, a city cannot meet this statutory mandate if it can lose the right to exercise administrative control of prehospital emergency services absent an agreement with a county or local EMS agency. Symons's interpretation would create the possibility that a city could lose the right to provide emergency services before any other public entity has agreed to assume responsibility for provision of those services.  Such an interpretation does not advance the purpose of the statutory scheme to "ensure a continuity of emergency medical services for residents of section 1797.201 cities and fire districts until agreements have been

---

[7] We observe that this interpretation is also in line with the Supreme Court's discussion in *County of San Bernardino*, in which it explained that "the Legislature likely contemplated that section 1797.201 cities and fire districts would eventually be integrated into local EMS agencies.  But the statue makes clear that these cities and fire districts must be integrated through *voluntary agreement* . . . ."  (*County of San Bernardino*, *supra*, 15 Cal.4th at pp. 924-925, italics added.)

reached integrating these jurisdictions into the local EMS agency" (*Valley Medical*, at p. 758), and we decline to endorse a reading of the statute that could produce such an absurd result.

Thus, in our view, merely showing that the City was unable to provide a specified service for some temporary period of time is not sufficient to establish a loss of section 1797.201 rights. There must also be a showing that the City relinquished its right to the county or local EMS agency and permitted the local EMS agency to provide the services discontinued by the City in order to show that the City lost its rights under section 1797.201. Because no such evidence was presented in this case, we find no error in the trial court's finding on this issue. The evidence cited by Symons on appeal does not compel a finding that the City discontinued any prehospital emergency services at any relevant time. Even if it did, such evidence alone would not be sufficient to support a finding in favor of Symons on the issue.

C. *Federal Anti-Trust Law*

Finally, we briefly address Symons argument that the City's franchise ordinances are invalid because they violate federal antitrust law (the Sherman Act; 15 U.S.C. § 1). Symons's entire argument on this point is premised on the factual assertion that the City acted outside the scope of its authority under the EMS Act. Symons concedes that any purported exclusive operating area does not violate the Sherman Act if "the EMS Act is properly followed according to the grants of power it contains." Symons further concedes that in its prior appeal from the grant of a preliminary injunction in this case, this court concluded that a city may create an exclusive operating area for provision of

23

prehospital emergency medical services under the EMS Act if the city retained administrative control over those services pursuant to section 1797.201.[8] (*City of Riverside*, *supra*, E064693.)

In light of the trial court's finding that Symons failed to meet its burden to show that the City acted outside the scope of its authority under the EMS Act when enacting RMC chapter 5.66, and our conclusion that substantial evidence in the record supports this finding, the factual premise for Symons's antitrust argument is not present in this case. As a result, we find no basis to reverse the judgment on this ground.

## IV. DISPOSITION

The judgment is affirmed. Respondent to recover its costs on appeal.

FIELDS         
J.

We concur:

MILLER     
        Acting P. J.

CODRINGTON   
        J.

---

[8] Symons continues to express its disagreement with our conclusion in *City of Riverside*, *supra*, E064693. However, "[u]nder the law-of-the-case doctrine, the determination by an appellate court of an issue of law is conclusive in subsequent proceedings in the same case." (*People v. Yokely* (2010) 183 Cal.App.4th 1264, 1273.) The doctrine applies "when, upon a subsequent trial, the issues and facts found remain substantially the same . . . ." (*Building Industry Assn. v. City of Oceanside* (1994) 27 Cal.App.4th 744, 761.) And the doctrine equally applies when the Court of Appeal reaches the merits of any legal questions on appeal from a preliminary injunction. (*Crespin v. Coye* (1994) 27 Cal.App.4th 700, 708.)

Filed 2/7/24

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| SYMONS EMERGENCY SPECIALTIES, | E078113 |
| Plaintiff and Appellant, | (Super.Ct.No. CIVDS1516027) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| CITY OF RIVERSIDE, | |
| Defendant and Respondent. | |

THE COURT

The four requests for publication of the nonpublished opinion filed in the above matter January 24, 26, and 29, 2024, are GRANTED. The opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c)(2), (4), and (6).

IT IS SO ORDERED that said opinion filed January 9, 2024, be certified for publication pursuant to California Rules of Court, rule 8.1105(b).

FIELDS

J.

We concur:

MILLER

Acting P. J.

CODRINGTON

J.

1